**In re RML DEVELOPMENT, INC., dba Pinetree Place Apartments dba Raintree Apartments, Debtor.**

Tax ID / EIN: 20–2492061.

No. 13–29244.

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

Signed July 10, 2014.

Steven N. Douglass, Esq., Memphis, TN, for the RML.

Prassana Mahadeva, Esq., White Plains, NY, Barry Kazan, Esq., New York, NY, R. Spencer Clift, III, Esq., Erno Lindner, Esq., Memphis, TN, Curtis L. Tuggle, Esq., Cleveland, OH, for Silverpoint.

Joseph S. Maniscalco, Esq., Salvatore LaMonica, Esq., Holly R. Holecek, Esq., Wantagh, NY, for Ms. Marianne O'Toole, N.Y. Chapter 7 Trustee.

Ms. Marianne O'Toole, N.Y. Chapter 7 Trustee, Katonah, NY.

Sean M. Haynes, Esq., Office of the United States Trustee, Memphis, TN.

Michael S. Devorkin, Esq., Ana–Claudia Roderick, Esq., New York, NY, for Slawomir Wisniewski.

## MEMORANDUM AND ORDER AMENDING THE COURT'S JUNE 9, 2014 ORDER AND JUNE 18, 2014 SUPPLEMENTAL ORDER COMBINED WITH NOTICE OF THE ENTRY THEREOF

DAVID S. KENNEDY, Chief Judge.

RML Development, Inc., dba Pinetree Place Apartments dba Raintree Apartments, the above-named Chapter 11 debtor ("RML"), previously sought to sell two residential apartment complexes located in Memphis, Tennessee, outside the ordinary course of business under 11 U.S.C. § 363 prior to the approval of the § 1125 disclosure statement. The court entered two prior orders authorizing RML to sell the two residential apartment complexes. SPCP Group III CNI 1, LLC ("Silverpoint") asserts a valid first mortgage security interest in the two apartment complexes and also seeks to be allowed to credit bid under § 363(k) at a § 363 auction sale.

The court now addresses, considering a totality of the particular facts and circumstances and applicable law of this case, whether Silverpoint should be allowed to credit bid at the § 363 sales and additionally whether the court's prior orders should be amended, in part. The following shall constitute the court's findings of fact and conclusions of law. These findings of fact and conclusions of law may be referred to as the court's "Amended § 363 Sale Order."

**Relevant Background**

Silverpoint filed the instant "Motion to Amend Sale Order" on June 24, 2014, seeking to amend the court's prior § 363 sale orders to allow it a right to credit bid under § 363(k) and also to establish bid procedures that essentially establish an auction sale process. The motion was brought pursuant to Fed. R. Bankr.P. 9023 and Fed.R.Civ.P. 59. Notice was provided to all parties in interest, and the court held a hearing on July 8, 2014. This is a core proceeding under 28 U.S.C. § 157(b)(2)(N), (A), and (O). The bankruptcy court has exclusive jurisdiction over these properties and also has the statutory and constitutional authority to hear and determine the matters regarding these properties of the estate. 28 U.S.C. §§ 1334(e) and 157(b)(2); *see also Executive Benefits Insurance Agency v. Arkison (In re Bellingham Insurance Agency, Inc.)*, — U.S. —, 134 S.Ct. 2165, 189 L.Ed.2d 83 (2014).

RML's § 541(a) bankruptcy estate primarily includes two residential apartment complexes located in Memphis, Tennessee, Pinetree Apartments[1] and the Raintree Apartments[2] (collectively the "Real Properties"). Silverpoint asserts a valid, first claim (POC # 5) secured by the Real Properties in the amount of $2,543,579.65. The supporting documentation to Silverpoint's claim indicates that its claim arose pursuant to a promissory note, deed of trust, and other documents that all were executed on August 2, 2012. Its claim is not a purchase money security interest. RML filed a limited objection to Silverpoint's claim. Also, Mr. Slawomir Wisniewski ("Mr. Wisniewski") asserts a claim (POC # 25) secured by the Real Properties in the amount of $3,860,000.00. Mr. Wis-

---

**1.** Real property located at 2146 East Shelby Drive in Memphis, Shelby County, Tennessee.

**2.** Real property located at 742 East Raines Road in Memphis, Shelby County, Tennessee.

niewski's claim is based on a constructive trust theory for his asserted superior legal interest that arose prior to Silverpoint's financing arrangement. Silverpoint objected to Mr. Wisniewski's claim.[3]

Furthermore, one of RML's shareholders, Mr. Roman Sledziejowski, filed bankruptcy in the Southern District of New York. Ms. Marianne O'Toole ("Ms. O'Toole") was subsequently appointed the Chapter 7 Trustee of the estate of Roman Sledziejowski ("Mr. Sledziejowski").[4] Ms. O'Toole alleges in the Southern District of New York that Mr. Sledziejowski operated a Ponzi scheme to defraud his creditors. Ongoing proceedings in New York seek, among other things, to substantively consolidate this chapter 11 case with Mr. Sledziejowski's chapter 7 case and possibly other estates as well. At this time in this case, it is unclear what role RML may have played, if any, in Mr. Sledziejowski's alleged scheme.

RML originally filed a § 363 sale motion[5] on December 17, 2013, to sell the Real Properties outside the ordinary course of business. Objections were raised by the U.S. Trustee for Region 8 (Tennessee and Kentucky), Silverpoint, and Ms. O'Toole. RML employed Mr. Steve Woodyard ("Mr. Woodyard") with court approval as its Real Estate Professional to market and sell the Real Properties. The original § 363 sale motion was withdrawn and a second motion[6] was filed on March 6, 2014. Objections followed. The court held numerous hearings on these proceedings. Mr. Woodyard testified at several of the prior § 363 hearings

that, among other things, offers were made on the Real Properties and that creating an orderly sale process is absolutely needed to bring the offerors to a successful closing.

After several more court hearings, which as a practical matter seemingly accomplished little, the court entered its first order on June 9, 2014, authorizing RML, among other things, to sell the Pinetree Apartments for the amount of $1,700,000.00 to WI Memphis, LLC, and, also, to allow WI Memphis, LLC, a due diligence period through July 10, 2014. On June 18, 2014, the court entered a supplemental order to its June 9, 2014 order that authorized RML and Mr. Woodyard to close the § 363 sale of Pinetree and escrow the proceeds pending further order of the court and, also, to market, sale, close, and escrow the proceeds from Raintree. Both sales were to be free and clear of all asserted liens, claims, rights, interests, and encumbrances with all such liens, claims, rights, interests, and encumbrances being transferred to the sale proceeds to be held pending further order of this court. Neither sale has closed to date. Silverpoint now moves to amend the court's prior orders to expressly permit it to "credit bid" under § 363(k) at a § 363 auction sale.

## Conclusions of Law

The term "credit bid" is not defined or even found in the Bankruptcy Code and instead is a colloquial term used to express a secured creditor's right to bid at the sale of its collateral and then, at closing, offset the purchase price by the value of its

---

3. *See* Fed. R. Bankr.P. 3007(a) and (b). Resolution of Mr. Wisniewski's asserted constructive trust claim and Silverpoint's objection may be the type of relief that requires an adversary proceeding pursuant to Fed. R. Bankr.P. 7001(2), (7), and/or (9).

4. Mr. Sledziejoski's case was originally filed as a chapter 11 case but was later converted to a case under chapter 7.

5. See docket # 88.

6. See docket # 155.

outstanding claim secured by the collateral being purchased. This colloquial term aptly describes a secured creditor's rights as articulated in 11 U.S.C. § 363(k); hence, a secured creditor's assertion of its § 363(k) rights is commonly referred to as "credit bidding."

 Though the term "credit bid" seems straightforward enough, the mechanics of § 363(k) credit bidding deserve special attention and provide guidance that will prove helpful in this discussion. Section 363(k) reads:

> At a sale under subsection (b) of this section of property that is subject to a lien that secures *an allowed claim,* unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

11 U.S.C. § 363(k) (emphasis added). This subsection specifically provides the holder of an allowed secured claim the right to credit bid at a § 363(b) sale. The sale of property under § 363(b) may be free and clear of any interest in such property under the statutory conditions enumerated in § 363(f), including where an interest is in bona fide dispute. See 11 U.S.C. § 363(f)(4). A claim is "deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). Upon a timely objection, the claim is no longer deemed allowed and may only be allowed

after notice, hearing, and the court's determination. 11 U.S.C. § 502(b). Where resolution of a claim cannot occur timely and would unduly delay the administration of the case, the court may estimate the allowed claim. 11 U.S.C. § 502(c)(1). Therefore, only an allowed claim under § 502 is entitled to "credit bid" at § 363(b) sale.

 Section 363(k) provides the holder of an allowed secured claim with two rights: (1) it "may bid at such sale" (i.e., a right to bid) and (2) if it is the purchaser at such sale, it "may offset [its] claim against the purchase price" (i.e., a right to offset (a.k.a. setoff [7])). Thus, at a § 363(b) sale of property of the estate that has been properly marketed and noticed,[8] the holder of the allowed secured claim may make a bid or offer for the property, and, if the trustee (debtor in possession) accepts that bid or offer, the holder of the allowed secured claim may offset or setoff the contract price at closing by the amount of its allowed secured claim.

 Interestingly, both the right to bid and the right to offset are further conditioned by the language of § 363(k), which states that the two rights may be exercised "unless the court for cause orders otherwise." 11 U.S.C. § 363(k). Thus, the bankruptcy court "for cause" may order that the right to bid or the right to offset, as both are articulated under the normal procedure of § 363(k), be

---

7. The right to offset is fundamentally the same as a right to setoff. "Courts use the term 'offset' and 'setoff' interchangeably, often switching between them from sentence to sentence, supporting the conclusion that there is no substantive difference between them." *Black's Law Dictionary* 1120 (8th ed. 2004). (citing 4 Ann Taylor Schwing, California Affirmative Defenses 2d § 44:1, at 4–5 (1996). "The right of setoff (also called 'offset') allows entities that owe each other money to apply

their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.' " *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995) (*citing Studley v. Boylston Nat. Bank,* 229 U.S. 523, 528, 33 S.Ct. 806, 57 L.Ed. 1313 (1913)); *see also* 11 U.S.C. § 553.

8. *See* Fed. R. Bankr.P. 6004 and 2002(c).

modified or denied.[9] "Cause" is not statutorily defined in the Bankruptcy Code. "Because the Code provides no definition of what constitutes 'cause' ..., courts must determine whether discretionary relief is appropriate on a case-by-case basis." *In re Laguna Associates Ltd. Partnership*, 30 F.3d 734, 737 (6th Cir.1994). "Although what constitutes cause is 'discretionary with the bankruptcy court,' this discretion does not give the bankruptcy court the authority to act arbitrarily or to be freewheeling. In other words, the standard is not standardless." *In re Davis*, 237 B.R. 177, 182 (M.D.Ala.1999).

 Intrinsically, acting "for cause" looks to the court's equity powers that allow the court to balance the interests of the debtor, its creditors, and the other parties of interests in order to achieve the maximization of the estate and an equitable distribution to all creditors. *See Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 51, 128 S.Ct. 2326, 171 L.Ed.2d 203 (2008); *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 527, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984); *Katchen v. Landy*, 382 U.S. 323, 336, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) ("bankruptcy courts are inherently proceedings in equity"). However, "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Law v. Siegel*, —— U.S. ——, 134 S.Ct. 1188, 1194–95, 188 L.Ed.2d 146 (2014) (*quoting Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988)) (quotation marks omitted). Here, the language of § 363(k), "unless the court for cause orders otherwise," allows the bankruptcy court to exercise its inherent equitable powers to modify or deny the rights otherwise provided under § 363(k). *See also* 11 U.S.C. § 105(a). The confines of § 363(k) of the Bankruptcy Code statutorily provide that the bankruptcy court may exercise its equitable powers.[10] Therefore, "credit bidding" under § 363(k) does *not* allow the holder of an allowed secured claim to exercise an *absolute right* to purchase its collateral and offset that purchase by its allowed secured claim. *See*, for example, *In re The Free Lance-Star Publishing Co. of Fredericksburg, VA*, 512 B.R. 798, 2014 WL 2505627, *5 (Bankr.E.D.Va.2014) ("Credit bidding ... is not an absolute right."); *In re Fisker Automotive Holdings, Inc.*, 510 B.R. 55, 59 (Bankr.D.Del.2014) ("... the right to credit bid is not absolute."); *In re Theroux*, 169 B.R. 498, 499, n. 3 (Bankr.D.R.I.1994) ("... there is no absolute entitlement to credit bid ...").[11] The bankruptcy court

---

9. *In re River Road Hotel Partners, LLC*, 2010 WL 6634603, *2 (Bankr.N.D.Ill.2010), *aff'd sub nom. River Road Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642 (7th Cir. 2011), *aff'd sub nom. RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, —— U.S. ——, 132 S.Ct. 2065, 182 L.Ed.2d 967 (2012) (Section 363 allows a bankruptcy court to place "conditions upon a secured creditor's right to credit bid without denying the right altogether. For example, courts have required secured creditors to put cash in escrow, pay a portion of the bid in cash, or furnish a letter of credit when the amount and validity of an alleged senior lien is in dispute.") (citations omitted).

10. *Compare* to 11 U.S.C. § 522(k) and *Law v. Siegel*, —— U.S. ——, 134 S.Ct. 1188, 188 L.Ed.2d 146 (2014) (holding that the bankruptcy court cannot use its equitable powers to equitably surcharge an exemption where § 522(k) statutorily prohibits such a surcharge).

11. Though each of these cases correctly determines that there is no absolute right to credit bid, this court is not prepared to go as far as some of these courts and hold that the mere "chilling" of third party bids is sufficient cause to justify modifying or denying a secured creditor's rights. The modification or denial of credit bid rights for cause under § 363(k) should be an extraordinary excep-

should only modify or deny a § 363(k) credit bid when equitable concerns give it cause. This court believes such a modification or denial of credit bid rights should be the extraordinary exception and not the norm.

### Silverpoint's Right to Credit Bid under § 363(k)

Here, Silverpoint filed its proof of claim pursuant to 11 U.S.C. § 501; however, RML's objection to Silverpoint's claim created a contested matter pursuant to and governed by Fed. R. Bankr.P. 9014 and caused Silverpoint's claim not to be "deemed allowed" under 11 U.S.C. § 502(a). Resolving the claim objection may require extensive discovery and certainly will require a notice and a hearing. Fed. R. Bankr.P. 3007(a). This will inevitably further delay the sale of the Real Properties and could likely cause a deprivation of the present value of the bankruptcy estate; not the maximization of the bankruptcy estate that the court seeks to foster. Thus, the sale of the Real Properties should occur before the contested matter regarding the claim objection can be judicially resolved.

Though the court cannot resolve the objection to a claim in a § 363 sale proceeding, the court may, however, estimate the allowed claim to avoid unduly delaying the administration of the estate-here, the § 363 sale. 11 U.S.C. § 502(c)(1). RML's objection to Silverpoint's claim is limited and does not seek a full disallowance of the claim. Rather, it objects to Silverpoint's calculation of interest and reconciliation of payments and fees used to arrive at its claim amount totaling $2,543,579.65. It apparently admits that Silverpoint's claim

should be allowed in an amount totaling $2,354,759.55.

· At this time, no party in interest appears to dispute that Silverpoint has an allowed secured claim, but a bona fide dispute exists to the extent of the amount of that claim between RML and Silverpoint. Since RML admits that the amount of the claim is $2,354,759.55, the court is prepared at this time to "estimate" Silverpoint's allowed secured claim and determine that, for purposes of credit bidding at the § 363 sale, Silverpoint may bid an allowed secured claim equal to the uncontested portion of its claim, $2,354,759.55.

This § 363 sale process seemingly became somewhat contentious and riddled with ancillary problems. The court is aware of numerous pending allegations in Tennessee, New York, and perhaps even Poland. These allegations are serious and primarily assert a Ponzi scheme, fraudulent transfers, breaches of fiduciary duty, and the like. Unfortunately the court at this stage of the estate administration cannot turn a blind eye to these allegations and blindly ignore objections to claims. Because of this, the court finds under the particular facts and circumstances of this case that sufficient cause exists under § 363(k) to modify Silverpoint's credit bid rights. That is, Silverpoint shall be allowed a right to credit bid at the § 363 sale established by the bid procedures in this order; however, its right to offset shall be limited to $2,354,759.55. If Silverpoint is the successful bidder and its bid exceeds $2,354,759.55, Silverpoint shall be required to pay such amount that exceeds $2,354,759.55 in cash (or the equivalent thereof) at closing. These potential excess proceeds shall be held in escrow pending

---

tion that is used only upon equitable considerations (e.g., competing claims, collusion, or other fraudulent or bad faith acts). This court is convinced that, where a creditor

holds an uncontested secured claim, it should ordinarily be permitted to bid at a § 363 sale of its collateral regardless of its intrinsic impact on other bidding.

further orders of the court regarding, among other things, RML's objection to Silverpoint's claim.

Furthermore, the court, relying on statements of counsel, believes that Mr. Wisniewski, Ms. O'Toole, and Silverpoint have either settled their disputes and objections to claims or are in the process of settling them. Mr. Wisniewski, Ms. O'Toole, and Silverpoint each assert claims that allege to be the senior legal interest in the Real Properties. Silverpoint has formally objected to Mr. Wisniewski's claim. Mr. Wisniewski and Ms. O'Toole have reserved their right to object to Silverpoint's claim if the settlement is not consummated. The court is not prepared at this immediate time to resolve these competing claims in the context of a § 363 sale motion if the parties cannot consensually come to an agreement. If, for whatever reason, these disputes are not settled or to be settled by the § 363 sale date, the court for cause orders Silverpoint's credit bid rights under § 363(k) to be further modified as follows. In order to exercise its credit bid rights and/or receive a distribution from the § 363 sales proceeds if a settlement is not reached, Silverpoint shall provide a letter of credit, surety bond, or other instrument of the like, as approved by the court, in the amount of its proposed credit bid and/or distribution from the § 363 sale proceeds. If such an instrument is provided, Silverpoint may offset its purchase price and/or receive a distribution from the sales proceeds equal to the amount of its allowed claim, being $2,354,759.55 for purposes of this § 363 sale. Otherwise, Silverpoint shall have no credit bid right to offset at closing, and RML is ordered to escrow the sales proceeds pending further court order regarding the competing claims and objections. Again, the orders in this instant paragraph are contingent upon Mr. Wisniewski, Ms.

O'Toole, and Silverpoint not reaching a settlement agreement.

Obviously, if a third party is the successful bidder and purchaser of the Real Properties, this credit bidding discussion is moot. Regardless of the identity of the purchaser, the court reserves the right to approve RML's final sale motion to assure that it is fair and reasonable and based upon a sound business justification. *See Stephens Industries, Inc. v. McClung*, 789 F.2d 386 (6th Cir.1986). Furthermore, Mr. Woodyard appears to be an expert regarding the sale of similarly situated properties in Memphis and gives substantial credibility to the sales process, which has been noted by nearly every party during the numerous hearings. Armed with these two protections along with the now modified § 363(k) credit bid rights, the court is confident the parties expediently will market and sell these Real Properties to preserve the present value of this § 541(a) estate.

### Bid Procedures

Alongside the credit bid dispute, the parties failed to formalize bid procedures related to the § 363 sale. The court's two prior orders provided that the § 363 sale should be conducted consistent with the ordinary sale of real property: (1) the owner markets the property for sale, (2) the owner receives an offer or offers for the property, (3) the owner accepts the highest and best offer, thus, creating a purchase contract between the owner and offeror, and (4) the parties to the purchase contract execute the necessary documents and financing to complete the transfer and close the sale. Silverpoint seeks to amend the two prior orders to change the bid procedures and, thereby, conduct an auction sale under § 363. Mr. Wisniewski and Ms. O'Toole support such an amendment.

An auction sale is enticing because it offers certainty, finality, and orderliness to the § 363 sale process. As previously mentioned, the instant § 363 sale process has been somewhat contentious and drawn out. This contention and delay potentially jeopardizes the entire sales process here and may even cause diminution in the present value of this estate. Therefore, the court finds under these particular facts and circumstances that an auction sale will serve the best interests of this estate, its creditors, and other parties in interest because this allows the Real Properties to be sold in a manner that finally resolves the pending § 363 sale motion in an orderly and expedient manner.

Accordingly, the court's June 9, 2014 order [12] and its June 18, 2014 supplement order [13] are hereby amended and restated, in their entirety, by this order, and shall have no further force or effect. The "Notice Re Incorporated Bid, Auction and Sale Terms and Procedures" (the "Sale Procedures") attached hereto and incorporated hearing by reference are hereby ratified and approved in all respects to the sale of the Real Properties.

Mr. Woodyard and RML are authorized to market and sale the Real Properties in accordance with the terms and conditions of the incorporated Sale Procedures.

Multi–South Management Services, LLC, the court-appointed custodian of the Real Properties (the "Custodian"), (i.e., the pre-petition receiver), shall continue to maintain and manage the Real Properties through the closing date of this § 363 sale (the "Closing Date"). The Custodian shall pay any and all ordinary and customary operating expenses through the Closing Date. The Custodian shall pay any and all outstanding and current taxes relating to the Real Properties, including but not limited to real estate and school taxes, through the Closing Date. The Custodian shall make any and all payments under this paragraph from monies generated from the operation of the Real Properties.

This sale shall be free and clear of all asserted liens, claims, rights, interests, and encumbrances in accordance with 11 U.S.C. § 363(f). All liens, claims, rights, interests, and encumbrances on the Real Properties shall be transferred to the § 363 sale proceeds. If all conditions of this order are satisfied, RML is authorized to pay Silverpoint's allowed secured claim up to and totaling $2,354,759.55 from the § 363 sale proceeds. If excess § 363 sales proceeds exist after paying Silverpoint's allowed secured claim, RML is ordered to escrow these excess proceeds pending further order of this court with any competing and countervailing claims being transferred to such surplus proceeds.

If Silverpoint is selected as a successful bidder and closes on the purchase of one or both of the Real Properties, it shall be (i) deemed to be a good faith, arm's length purchaser of the Real Properties, (ii) fully entitled to the protections afforded by the 11 U.S.C. § 363(m), and (iii) shall be deemed not to be a successor in interest to RML.

The purchase price for the Real Properties, whether they are sold jointly or individually, is exclusive of any and all federal, state, and local transfer sales, recording, stamp, or other similar taxes that may be imposed by reason of the sale, transfer, assignment, and delivery of the Real Properties (collectively, the "Transfer Taxes"), which Transfer Taxes are the sole obligation of the Purchaser or Purchasers and must be delivered to RML at the closing

12. See Docket # 184.

13. See Docket # 189.

by certified check made payable to the appropriate taxing authority(ies).

The stays provided in Fed. R. Bankr.P. 6004(h) and 6006(d) are waived, and this order shall be effective immediately upon its entry.

This court shall retain jurisdiction over any matters related to or arising out of or from the implementation of this order.

Based on the forgoing and the entire case record as a whole, IT IS ORDERED AND NOTICE IS HEREBY GIVEN that Silverpoint's Motion to Amend is granted, in part, and that the court's prior § 363 sale orders are amended consistent with and as detailed in the court's discussion above, which includes the incorporated and attached Sale Procedures.

## ATTACHMENT

### NOTICE RE INCORPORATED BID, AUCTION, AND SALE TERMS AND PROCEDURES

#### Relevant Background

1. On August 29, 2013, RML Development, Inc. d/b/a Pinetree Place Apartments d/b/a Raintree Apartments ("RML" or the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code ("the Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Tennessee (the "Bankruptcy Court").

2 The Debtor owns and operates two multi-family apartment complexes located respectively at 2146 East Shelby Drive in Memphis, Tennessee (the "Pinetree Property") and 742 East Raines Road, also in Memphis (the "Raintree Property" and each a "Real Property" and collectively, the "Real Properties").

3. These Bid, Auction, and Sale Terms and Procedures (the "Sale Procedures") shall govern the solicitation and submis-

sion of bids (each a "Bid") by bidders (each a "Bidder") at the Auction (defined below.) The Sale Procedures are hereby incorporated into the Bankruptcy Court's July 9, 2014 Order Amending the Court's June 9, 2014 Order and June 18, 2014 Supplemental Order (the "Amended § 363 Sale Order"). The terms and procedures in the Amended § 363 Sale Order shall supersede the terms and procedures of these Sale Procedures upon any inconsistencies or conflicts between the two.

#### Credit Bidding by Silverpoint

The Sale Procedures set forth herein are in all respects subject to the modified § 363(k) rights of SPCP Group III CNI 1, LLC ("Silverpoint") to credit bid its allowed secured claim, being $2,354,759.55, with respect to Pinetree Property, the Raintree Property, or the Real Properties, as the case may be.

#### Bid Procedures

In order to qualify as a qualified bidder (a "Qualified Bidder"), any bidder (a "Bidder") who wishes to place a bid (a "Bid") for the Pinetree Property, the Raintree Property, or the Real Properties and qualify as a Qualified Bidder at the Auction must comply with the procedures and deadlines that follow:

a) The Real Properties will be offered for sale jointly or separately. After the auction sale, Debtor will determine in its discretion, with the consent of Silverpoint, which bid(s) is (are) the highest or best bid(s) for the Real Properties.

By no later than 12:00 noon Central Time on August 1, 2014 (the "Bid Deadline"), each Bidder, other than with respect to any credit bid that must be submitted by Silverpoint, must deliver a deposit of $25,000.00, and such Bidder must also deliver its

Bid for the property in question to the following parties:

(i) Counsel to the Debtor (Attn: Steve N. Douglass, Esq., Harris Shelton, Hanover, Walsh, PLLC, 2700 One Commerce Square, Memphis, TN 38103:(901)525–1455 (phone); Email: snd@harrisshelton.com);

(ii) Counsel to Silverpoint (Attn: Curtis Tuggle, Esq., 3900 Key Center, 127 Public Square, Cleveland, OH 44114; (216)566–5500; Email: Curtis. Tuggle@thompsonHine.com); and

(iii) Office of the United States Trustee (Attn: Sean M. Haynes, Esq., 200 Jefferson Ave., Suite 400, Memphis, TN 38103; (901)544–3251 (phone); Email sean.m.haynes@usdoj.gov).

### *Auction*

b) If necessary, an auction (the "Auction") to consider any Qualified Bids in respect of the Real Properties will be held on **August 5, 2014 at 9:00 a.m. Central Time** at the offices of Harris Shelton Hanover Walsh, PLLC, 2700 One Commerce Square, Memphis, TN 38103, or such other location designated by the Debtor, with the consent of Silverpoint. All Qualified Bidders must make arrangements with the Debtor to appear at the Auction, whether physically, by an agent or representative, telephonically, or other accommodations as determined by the Debtor with consent of Silverpoint.

c) At the Auction, any subsequent higher bids must be in incremental increases of at least $10,000.00 unless otherwise agreed by the Debtor, and the Debtor shall, with the consent of Silverpoint, announce its selection of the successful bidder(s) for the Real

Property or Real Properties (the "Successful Bidder(s)").

d) Prior to the Auction, each initial Bid must (i) include a copy of the written purchase offer in the form of an asset purchase agreement, executed by the Bidder, in form and substance satisfactory to the Debtor, with the consent of Silverpoint, signed by the Bidder, and subject to acceptance by the Debtor solely by its execution thereof and necessary Bankruptcy Court approval; (ii) other than with respect to any modified credit bid that may be submitted by Silverpoint, demonstrate to the satisfaction of the Debtor that the Bidder has access to, or possession of, available cash to close the purchase without financing, or that it has a term sheet from a lender or lender's agent and evidence of sufficient cash equity to obtain a loan in the amount of the purchase price; (iii) include confirmation that the Bidder shall accept and abide by these Sale Procedures and the terms, conditions and procedures set forth in the Bankruptcy Court's Amended § 363 Sale Order; (iv) other than with respect to any modified credit bid that may be submitted by Silverpoint, contain relevant background and financial information (including without limitation the Bidder's latest available financial statements) reasonably satisfactory to the Debtor and Silverpoint, demonstrating the Bidder's financial ability to close and to consummate an acquisition of the Real Property or Real Properties; (v) include a statement that such Bidder's offer is irrevocable until two business days after the closing of a purchase of the Real Property or Real Properties, unless such bid is cancelled and returned to

the Bidder earlier by the Debtor; (vi) describe the nature of any insider connection or relationship between the Bidder and the Debtor or include a statement that there is no such connection or relationship; and (vii) other than with respect to any modified credit bid that may be submitted by Silverpoint, include a good faith deposit in immediately available funds in the amount of $25,000 (the "Bid Deposit"), which shall be made payable to and/or delivered to Harris Shelton Hanover Walsh, PLLC, the Debtor's counsel, by no later than the Bid Deadline.

e) The Bid Deposit shall be deposited into a trust account maintained by counsel for the Debtor. Subject to the following paragraphs regarding the Back–Up Bid, within ten days following the entry of an order approving the sale of the Real Property or Real Properties to the Successful Bidder, the Bid Deposit (exclusive of any earned interest) will be returned to any Qualified Bidder that is not selected as the highest and best offer at the Sale Hearing.

f) Once the highest and best bid has been selected, the Successful Bidder, other than with respect to any credit bid that may be submitted by Silverpoint, shall increase the Bid Deposit by $25,000.00 to equal $50,000.00 in total, which will be non-refundable to the Successful Bidder in the event such Successful Bidder's bid is approved by the Bankruptcy Court at the Sale Hearing (as defined below) as the highest and/or best offer and the Successful Bidder fails to close on the purchase of the Real Property or Real Properties, and in which case the Back–Up Bid will be presented to the Bankruptcy Court as the Successful Bid, as set forth in the next paragraph, subject to the same procedures.

g) The Bankruptcy Court shall register the second highest Qualified Bid (the "Back–Up Bid") and Bidder (the "Back–Up Bidder"), and the Back–Up Bid shall be presented for approval to the Bankruptcy Court as the Back–Up Bid. Upon the Successful Bidder's consummation of the acquisition of the Real Property or Real Properties, the Back–Up Bidder's deposit will be returned. The Back–Up Bidder shall be presented for approval to the Bankruptcy Court as the Successful Bidder in the event the initial Successful Bidder fails to consummate the acquisition of the Real Property or Real Properties in accordance with the provisions described above.

h) The Real Property or Real Properties, as the case may be will be sold on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtor, except to the extent set forth in the applicable agreement of the Successful Bidder. Except as might otherwise be provided in the applicable purchase agreement, including with respect to permitted encumbrances, if any, all of the Debtor's right, title, and interest in and to the Real Property or Real Properties subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, equitable servitudes, with Silverpoint's Liens against the Real Properties attaching to the sale proceeds in accordance with the Bankruptcy Court's Amended § 363 Sale Order. Due diligence

access may include on-site inspections and such other matters which a Bidder may request and which the Debtor, in its reasonable discretion, may agree to. The Debtor is not obligated to furnish any information relating to the Real Property or Real Properties to any person other than a Bidder.

### *Sale Hearing*

i) The hearing to approve the sale of the Real Property or Real Properties (the "Sale Hearing") will be held on **August 7, 2014, at 1:30 p. m. Central Time** before the Honorable David S. Kennedy, United States Bankruptcy Judge for the Western District of Tennessee, at the United States Bankruptcy Court, 200 Jefferson Avenue, Courtroom No. 945, Memphis, Tennessee 38103. The Sale Hearing may be adjourned from time to time without further notice other than an announcement in open court of such adjournment or on the Bankruptcy Court's calendar on the date scheduled for the Sale Hearing.

j) **ALL OBJECTIONS TO THE PROPOSED TRANSACTION SHALL BE FILED WITH THE BANKRUPTCY COURT AND SERVED ON THE PARTIES SET FORTH IN PARAGRAPH (a) ABOVE ON OR BEFORE 9:00 A.M. CENTRAL TIME ON AUGUST 6, 2014.**

### *Miscellaneous*

k) Nothing contained in these Sale Procedures is intended to supersede or alter any provisions of the Bankruptcy Code or otherwise interfere with the jurisdiction of the Bankruptcy Court. All of the terms and conditions set forth in these Sale Proce-

dures are subject to modification as may be directed by the Debtor or by the Bankruptcy Court. The Debtor reserves the right to modify these Sale Procedures, with the consent of Silverpoint, at the Auction (or thereafter) to maintain consistency with the provisions of the Bankruptcy Code and/or Orders of the Bankruptcy Court.

l) The closing of the transactions contemplated by these Sale Procedures (the "Closing") shall take place at the offices of Harris Shelton Hanover Walsh, PLLC, or such other location at the Debtor and the Successful Bidder may agree upon, no later than ten business days after the date the Bankruptcy Court enters an Order confirming the results of the Auction, with the full amount of the purchase price to be paid at closing, **TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL PURCHASER,** although such date may be extended solely by the Debtor, with the consent of Silverpoint.