(Slip Opinion) OCTOBER TERM, 2013 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## LAW *v.* SIEGEL, CHAPTER 7 TRUSTEE

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 12–5196.  Argued January 13, 2014—Decided March 4, 2014

Petitioner Law filed for Chapter 7 bankruptcy.  He valued his Califor-
nia home at $363,348, claiming that $75,000 of that value was cov-
ered by California's homestead exemption and thus was exempt from
the bankruptcy estate.  See 11 U. S. C. §522(b)(3)(A).  He also
claimed that the sum of two voluntary liens—one of which was in fa-
vor of "Lin's Mortgage & Associates"—exceeded the home's nonex-
empt value, leaving no equity recoverable for his other creditors.  Re-
spondent Siegel, the bankruptcy estate trustee, challenged the "Lin"
lien in an adversary proceeding, but protracted and expensive litiga-
tion ensued when a supposed "Lili Lin" in China claimed to be the
beneficiary of Law's deed of trust.  Ultimately, the Bankruptcy Court
concluded that the loan was a fiction created by Law to preserve his
equity in the house.  It thus granted Siegel's motion to "surcharge"
Law's $75,000 homestead exemption, making those funds available to
defray attorney's fees incurred by Siegel in overcoming Law's fraudu-
lent misrepresentations.  The Ninth Circuit Bankruptcy Appellate
Panel and the Ninth Circuit affirmed.

*Held*: The Bankruptcy Court exceeded the limits of its authority when
it ordered that the $75,000 protected by Law's homestead exemption
be made available to pay Siegel's attorney's fees.  Pp. 5–12.

   (a) A bankruptcy court may not exercise its authority to "carry out"
the provisions of the Code, 11 U. S. C. §105(a), or its "inherent power
. . . to sanction 'abusive litigation practices,'" *Marrama* v. *Citizens
Bank of Mass.*, 549 U. S. 365, 375–376, by taking action prohibited
elsewhere in the Code.  Here, the Bankruptcy Court's "surcharge"
contravened §522, which (by reference to California law) entitled Law
to exempt $75,000 of equity in his home from the bankruptcy estate,
§522(b)(3)(A), and which made that $75,000 "not liable for payment of

any administrative expense," §522(k), including attorney's fees, see §503(b)(2).  The surcharge thus exceeded the limits of both the court's authority under §105(a) and its inherent powers.  Pp. 5–7.

(b) Siegel argues that an equitable power to deny an exemption by "surcharging" exempt property in response to a debtor's misconduct can coexist with §522.  But insofar as that argument equates the surcharge with an outright denial of Law's homestead exemption, it founders on this case's procedural history.  The Bankruptcy Appellate Panel recognized that because no one timely objected to the homestead exemption, it became final before the surcharge was imposed.  And a trustee who fails to make a timely objection cannot challenge an exemption.  *Taylor* v. *Freeland & Kronz*, 503 U. S. 638, 643–644.  Assuming the Bankruptcy Court could have revisited Law's entitlement to the exemption, §522 specifies the criteria that render property exempt, and a court may not refuse to honor a debtor's invocation of an exemption without a valid statutory basis.  Federal courts may apply state law to disallow state-created exemptions, but federal law itself provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code.  Pp. 7–10.

(c) Neither the holding of *Marrama* v. *Citizens Bank* nor its dictum points toward a different result.  There, the debtor's bad faith kept him from converting his bankruptcy from a Chapter 7 liquidation to a Chapter 13 reorganization as permitted by §706(a).  But that was because his conduct prevented him from qualifying under Chapter 13, and thus he could not satisfy §706(d), which expressly conditions conversion on the debtor's ability to qualify under Chapter 13.  Pp. 10–11.

(d) This ruling forces Siegel to shoulder a heavy financial burden due to Law's egregious misconduct and may produce inequitable results for other trustees and creditors, but it is not for courts to alter the balance that Congress struck in crafting §522.  Cf. *Guidry* v. *Sheet Metal Workers National Pension Fund*, 493 U. S. 365, 376–377.  P. 11.

(e) Ample authority remains to address debtor misconduct, including denial of discharge, see §727(a)(2)–(6); sanctions for bad-faith litigation conduct under the Bankruptcy Rules, §105(a), or a bankruptcy court's inherent powers; enforcement of monetary sanctions through the normal procedures for collecting money judgments, see §727(b); or possible prosecution under 18 U. S. C. §152.  Pp. 11–12.

435 Fed. Appx. 697, reversed and remanded.

SCALIA, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 12–5196

STEPHEN LAW, PETITIONER *v.* ALFRED H. SIEGEL,
CHAPTER 7 TRUSTEE

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[March 4, 2014]

JUSTICE SCALIA delivered the opinion of the Court.

The Bankruptcy Code provides that a debtor may ex-
empt certain assets from the bankruptcy estate. It further
provides that exempt assets generally are not liable for
any expenses associated with administering the estate. In
this case, we consider whether a bankruptcy court none-
theless may order that a debtor's exempt assets be used to
pay administrative expenses incurred as a result of the
debtor's misconduct.

## I. Background

### A

Chapter 7 of the Bankruptcy Code gives an insolvent
debtor the opportunity to discharge his debts by liquidat-
ing his assets to pay his creditors. 11 U. S. C. §§704(a)(1),
726, 727. The filing of a bankruptcy petition under Chap-
ter 7 creates a bankruptcy "estate" generally comprising
all of the debtor's property. §541(a)(1). The estate is
placed under the control of a trustee, who is responsible
for managing liquidation of the estate's assets and distri-
bution of the proceeds. §704(a)(1). The Code authorizes

the debtor to "exempt," however, certain kinds of property
from the estate, enabling him to retain those assets post-
bankruptcy. §522(b)(1). Except in particular situations
specified in the Code, exempt property "is not liable" for
the payment of "any [prepetition] debt" or "any adminis-
trative expense." §522(c), (k).

Section 522(d) of the Code provides a number of exemp-
tions unless they are specifically prohibited by state law.
§522(b)(2), (d). One, commonly known as the "homestead
exemption," protects up to $22,975 in equity in the debt-
or's residence. §522(d)(1) and note following §522; see
*Owen* v. *Owen*, 500 U. S. 305, 310 (1991). The debtor may
elect, however, to forgo the §522(d) exemptions and in-
stead claim whatever exemptions are available under
applicable state or local law. §522(b)(3)(A). Some States
provide homestead exemptions that are more generous
than the federal exemption; some provide less generous
versions; but nearly every State provides some type of
homestead exemption. See López, State Homestead Ex-
emptions and Bankruptcy Law: Is It Time for Congress To
Close the Loophole? 7 Rutgers Bus. L. J. 143, 149–165
(2010) (listing state exemptions).

## B

Petitioner, Stephen Law, filed for Chapter 7 bankruptcy
in 2004, and respondent, Alfred H. Siegel, was appointed
to serve as trustee. The estate's only significant asset was
Law's house in Hacienda Heights, California. On a sched-
ule filed with the Bankruptcy Court, Law valued the
house at $363,348 and claimed that $75,000 of its value
was covered by California's homestead exemption. See
Cal. Civ. Proc. Code Ann. §704.730(a)(1) (West Supp.
2014). He also reported that the house was subject to two
voluntary liens: a note and deed of trust for $147,156.52 in
favor of Washington Mutual Bank, and a second note and
deed of trust for $156,929.04 in favor of "Lin's Mortgage &

Associates." Law thus represented that there was no equity in the house that could be recovered for his other creditors, because the sum of the two liens exceeded the house's nonexempt value.

If Law's representations had been accurate, he presumably would have been able to retain the house, since Siegel would have had no reason to pursue its sale. Instead, a few months after Law's petition was filed, Siegel initiated an adversary proceeding alleging that the lien in favor of "Lin's Mortgage & Associates" was fraudulent. The deed of trust supporting that lien had been recorded by Law in 1999 and reflected a debt to someone named "Lili Lin." Not one but two individuals claiming to be Lili Lin ultimately responded to Siegel's complaint. One, Lili Lin of Artesia, California, was a former acquaintance of Law's who denied ever having loaned him money and described his repeated efforts to involve her in various sham transactions relating to the disputed deed of trust. *That* Lili Lin promptly entered into a stipulated judgment disclaiming any interest in the house. But that was not the end of the matter, because the second "Lili Lin" claimed to be the true beneficiary of the disputed deed of trust. Over the next five years, *this* "Lili Lin" managed—despite supposedly living in China and speaking no English—to engage in extensive and costly litigation, including several appeals, contesting the avoidance of the deed of trust and Siegel's subsequent sale of the house.

Finally, in 2009, the Bankruptcy Court entered an order concluding that "no person named Lili Lin ever made a loan to [Law] in exchange for the disputed deed of trust." *In re Law*, 401 B. R. 447, 453 (Bkrtcy. Ct. CD Cal.). The court found that "the loan was a fiction, meant to preserve [Law's] equity in his residence beyond what he was entitled to exempt" by perpetrating "a fraud on his creditors and the court." *Ibid.* With regard to the second "Lili Lin," the court declared itself "unpersuaded that Lili Lin of

China signed or approved any declaration or pleading purporting to come from her." *Ibid.* Rather, it said, the "most plausible conclusion" was that Law himself had "authored, signed, and filed some or all of these papers." *Ibid.* It also found that Law had submitted false evidence "in an effort to persuade the court that Lili Lin of China— rather than Lili Lin of Artesia—was the true holder of the lien on his residence." *Id.,* at 452. The court determined that Siegel had incurred more than $500,000 in attorney's fees overcoming Law's fraudulent misrepresentations. It therefore granted Siegel's motion to "surcharge" the entirety of Law's $75,000 homestead exemption, making those funds available to defray Siegel's attorney's fees.

The Ninth Circuit Bankruptcy Appellate Panel affirmed. BAP No. CC–09–1077–PaMkH, 2009 WL 7751415 (Oct. 22, 2009) (*per curiam*). It held that the Bankruptcy Court's factual findings regarding Law's fraud were not clearly erroneous and that the court had not abused its discretion by surcharging Law's exempt assets. It explained that in *Latman* v. *Burdette*, 366 F. 3d 774 (2004), the Ninth Circuit had recognized a bankruptcy court's power to "equitably surcharge a debtor's statutory exemptions" in exceptional circumstances, such as "when a debtor engages in inequitable or fraudulent conduct." 2009 WL 7751415, *5, *7. The Bankruptcy Appellate Panel acknowledged that the Tenth Circuit had disagreed with *Latman*, see *In re Scrivner*, 535 F. 3d 1258, 1263–1265 (2008), but the panel affirmed that *Latman* was correct. 2009 WL 7751415, *7, n. 10. Judge Markell filed a concurring opinion agreeing with the panel's application of *Latman* but questioning "whether *Latman* remains good policy." 2009 WL 7751415, *10.

The Ninth Circuit affirmed. *In re Law*, 435 Fed. Appx. 697 (2011) (*per curiam*). It held that the surcharge was proper because it was "calculated to compensate the estate for the actual monetary costs imposed by the debtor's

misconduct, and was warranted to protect the integrity of the bankruptcy process." *Id.,* at 698. We granted certiorari. 570 U. S. ___ (2013).

## II. Analysis

### A

A bankruptcy court has statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U. S. C. §105(a). And it may also possess "inherent power . . . to sanction 'abusive litigation practices.'" *Marrama* v. *Citizens Bank of Mass.*, 549 U. S. 365, 375–376 (2007). But in exercising those statutory and inherent powers, a bankruptcy court may not contravene specific statutory provisions.

It is hornbook law that §105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." 2 Collier on Bankruptcy ¶105.01[2], p. 105–6 (16th ed. 2013). Section 105(a) confers authority to "carry out" the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits. That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere. See *Morton* v. *Mancari*, 417 U. S. 535, 550–551 (1974); *D. Ginsberg & Sons, Inc.* v. *Popkin*, 285 U. S. 204, 206–208 (1932).[1] Courts' inherent sanctioning powers are

---

[1] The second sentence of §105(a) adds little to the analysis. It states: "No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." Even if the "abuse of process" language were deemed to confer additional authority beyond that conferred by the first sentence (which is doubtful), that general authority would also be limited by more specific provisions of the Code.

likewise subordinate to valid statutory directives and prohibitions. *Degen* v. *United States*, 517 U. S. 820, 823 (1996); *Chambers* v. *NASCO, Inc.*, 501 U. S. 32, 47 (1991). We have long held that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of" the Bankruptcy Code. *Norwest Bank Worthington* v. *Ahlers*, 485 U. S. 197, 206 (1988); see, *e.g., Raleigh* v. *Illinois Dept. of Revenue*, 530 U. S. 15, 24–25 (2000); *United States* v. *Noland*, 517 U. S. 535, 543 (1996); *SEC* v. *United States Realty & Improvement Co.*, 310 U. S. 434, 455 (1940).

Thus, the Bankruptcy Court's "surcharge" was unauthorized if it contravened a specific provision of the Code. We conclude that it did. Section 522 (by reference to California law) entitled Law to exempt $75,000 of equity in his home from the bankruptcy estate. §522(b)(3)(A). And it made that $75,000 "not liable for payment of any administrative expense." §522(k).[2] The reasonable attorney's fees Siegel incurred defeating the "Lili Lin" lien were indubitably an administrative expense, as a short march through a few statutory cross-references makes plain: Section 503(b)(2) provides that administrative expenses include "compensation . . . awarded under" §330(a); §330(a)(1) authorizes "reasonable compensation for actual, necessary services rendered" by a "professional person employed under" §327; and §327(a) authorizes the trustee to "employ one or more attorneys . . . to represent or assist the trustee in carrying out the trustee's duties under this title." Siegel argues that even though attorney's fees incurred responding to a debtor's fraud qualify as "administrative expenses" for purposes of determining the trus-

_____

[2] The statute's general rule that exempt assets are not liable for administrative expenses is subject to two narrow exceptions, both pertaining to the use of exempt assets to pay expenses associated with the avoidance of certain voidable transfers of exempt property. §522(k)(1)–(2). Neither of those exceptions is relevant here.

tee's right to reimbursement under §503(b), they do not so qualify for purposes of §522(k); but he gives us no reason to depart from the "'normal rule of statutory construction'" that words repeated in different parts of the same statute generally have the same meaning. See *Department of Revenue of Ore.* v. *ACF Industries, Inc.*, 510 U. S. 332, 342 (1994) (quoting *Sorenson* v. *Secretary of Treasury*, 475 U. S. 851, 860 (1986)).

The Bankruptcy Court thus violated §522's express terms when it ordered that the $75,000 protected by Law's homestead exemption be made available to pay Siegel's attorney's fees, an administrative expense. In doing so, the court exceeded the limits of its authority under §105(a) and its inherent powers.

### B

Siegel does not dispute the premise that a bankruptcy court's §105(a) and inherent powers may not be exercised in contravention of the Code. Instead, his main argument is that the Bankruptcy Court's surcharge did not contravene §522. That statute, Siegel contends, "establish[es] the procedure by which a debtor may seek to claim exemptions" but "contains no directive requiring [courts] to allow [an exemption] regardless of the circumstances." Brief for Respondent 35. Thus, he says, recognition of an equitable power in the Bankruptcy Court to deny an exemption by "surcharging" the exempt property in response to the debtor's misconduct can coexist comfortably with §522. The United States, appearing in support of Siegel, agrees, arguing that §522 "neither gives debtors an absolute right to retain exempt property nor limits a court's authority to impose an equitable surcharge on such property." Brief for United States as *Amicus Curiae* 23.

Insofar as Siegel and the United States equate the Bankruptcy Court's surcharge with an outright denial of Law's homestead exemption, their arguments founder

upon this case's procedural history. The Bankruptcy Appellate Panel stated that because no one "timely op-pose[d] [Law]'s homestead exemption claim," the exemption "became final" *before* the Bankruptcy Court imposed the surcharge. 2009 WL 7751415, at *2. We have held that a trustee's failure to make a timely objection prevents him from challenging an exemption. *Taylor* v. *Freeland & Kronz*, 503 U. S. 638, 643–644 (1992).

But even assuming the Bankruptcy Court could have revisited Law's entitlement to the exemption, §522 does not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate. Rather, the statute exhaustively specifies the criteria that will render property exempt. See §522(b), (d). Siegel insists that because §522(b) says that the debtor "may exempt" certain property, rather than that he "*shall* be entitled" to do so, the court retains discretion to grant or deny exemptions even when the statutory criteria are met. But the subject of "may exempt" in §522(b) is the debtor, not the court, so it is the debtor in whom the statute vests discretion. A debtor need not invoke an exemption to which the statute entitles him; but if he does, the court may not refuse to honor the exemption absent a valid statutory basis for doing so.

Moreover, §522 sets forth a number of carefully cali-brated exceptions and limitations, some of which relate to the debtor's misconduct. For example, §522(c) makes exempt property liable for certain kinds of prepetition debts, including debts arising from tax fraud, fraud in connection with student loans, and other specified types of wrongdoing. Section 522(*o*) prevents a debtor from claim-ing a homestead exemption to the extent he acquired the homestead with nonexempt property in the previous 10 years "with the intent to hinder, delay, or defraud a credi-tor." And §522(q) caps a debtor's homestead exemption at approximately $150,000 (but does not eliminate it en-

tirely) where the debtor has been convicted of a felony that shows "that the filing of the case was an abuse of the provisions of" the Code, or where the debtor owes a debt arising from specified wrongful acts—such as securities fraud, civil violations of the Racketeer Influenced and Corrupt Organizations Act, or "any criminal act, intentional tort, or willful or reckless misconduct that caused serious physical injury or death to another individual in the preceding 5 years." §522(q) and note following §522. The Code's meticulous—not to say mind-numbingly detailed—enumeration of exemptions and exceptions to those exemptions confirms that courts are not authorized to create additional exceptions. See *Hillman* v. *Maretta*, 569 U. S. \_\_\_, \_\_\_ (2013) (slip op., at 12); *TRW Inc.* v. *Andrews*, 534 U. S. 19, 28–29 (2001).

Siegel points out that a handful of courts have claimed authority to disallow an exemption (or to bar a debtor from amending his schedules to claim an exemption, which is much the same thing) based on the debtor's fraudulent concealment of the asset alleged to be exempt. See, *e.g., In re Yonikus*, 996 F. 2d 866, 872–873 (CA7 1993); *In re Doan*, 672 F. 2d 831, 833 (CA11 1982) (*per curiam*); *Stewart* v. *Ganey*, 116 F. 2d 1010, 1011 (CA5 1940). He suggests that those decisions reflect a general, equitable power in bankruptcy courts to deny exemptions based on a debtor's bad-faith conduct. For the reasons we have given, the Bankruptcy Code admits no such power. It is of course true that when a debtor claims a *state-created* exemption, the exemption's scope is determined by state law, which may provide that certain types of debtor misconduct warrant denial of the exemption. *E.g., In re Sholdan*, 217 F. 3d 1006, 1008 (CA8 2000); see 4 Collier on Bankruptcy ¶522.08[1]–[2], at 522–45 to 522–47. Some of the early decisions on which Siegel relies, and which the Fifth Circuit cited in *Stewart*, are instances in which federal courts applied state law to disallow state-created exemptions.

See *In re Denson*, 195 F. 857, 858 (ND Ala. 1912); *Cowan* v. *Burchfield*, 180 F. 614, 619 (ND Ala. 1910); *In re Ansley Bros.*, 153 F. 983, 984 (EDNC 1907). But *federal law* provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code.

C

Our decision in *Marrama* v. *Citizens Bank*, on which Siegel and the United States heavily rely, does not point toward a different result. The question there was whether a debtor's bad-faith conduct was a valid basis for a bankruptcy court to refuse to convert the debtor's bankruptcy from a liquidation under Chapter 7 to a reorganization under Chapter 13. Although §706(a) of the Code gave the debtor a right to convert the case, §706(d) "expressly conditioned" that right on the debtor's "ability to qualify as a 'debtor' under Chapter 13." 549 U. S., at 372. And §1307(c) provided that a proceeding under Chapter 13 could be dismissed or converted to a Chapter 7 proceeding "for cause," which the Court interpreted to authorize dismissal or conversion for bad-faith conduct. In light of §1307(c), the Court held that the debtor's bad faith could stop him from qualifying as a debtor under Chapter 13, thus preventing him from satisfying §706(d)'s *express condition* on conversion. *Id.,* at 372–373. That holding has no relevance here, since no one suggests that Law failed to satisfy any express statutory condition on his claiming of the homestead exemption.

True, the Court in *Marrama* also opined that the Bankruptcy Court's refusal to convert the case was authorized under §105(a) and might have been authorized under the court's inherent powers. *Id.,* at 375–376. But even that dictum does not support Siegel's position. In *Marrama*, the Court reasoned that if the case had been converted to Chapter 13, §1307(c) would have required it to be either dismissed or reconverted to Chapter 7 in light of the debt-

or's bad faith. Therefore, the Court suggested, even if the Bankruptcy Court's refusal to convert the case had not been expressly authorized by §706(d), that action could have been justified as a way of providing a "prompt, rather than a delayed, ruling on [the debtor's] unmeritorious attempt to qualify" under §1307(c). *Id.,* at 376. At most, *Marrama*'s dictum suggests that in some circumstances a bankruptcy court may be authorized to dispense with futile procedural niceties in order to reach more expeditiously an end result required by the Code. *Marrama* most certainly did not endorse, even in dictum, the view that equitable considerations permit a bankruptcy court to contravene express provisions of the Code.

### D

We acknowledge that our ruling forces Siegel to shoulder a heavy financial burden resulting from Law's egregious misconduct, and that it may produce inequitable results for trustees and creditors in other cases. We have recognized, however, that in crafting the provisions of §522, "Congress balanced the difficult choices that exemption limits impose on debtors with the economic harm that exemptions visit on creditors." *Schwab* v. *Reilly*, 560 U. S. 770, 791 (2010). The same can be said of the limits imposed on recovery of administrative expenses by trustees. For the reasons we have explained, it is not for courts to alter the balance struck by the statute. Cf. *Guidry* v. *Sheet Metal Workers Nat. Pension Fund*, 493 U. S. 365, 376–377 (1990).

\*    \*    \*

Our decision today does not denude bankruptcy courts of the essential "authority to respond to debtor misconduct with meaningful sanctions." Brief for United States as *Amicus Curiae* 17. There is ample authority to deny the dishonest debtor a discharge. See §727(a)(2)–(6). (That

sanction lacks bite here, since by reason of a postpetition settlement between Siegel and Law's major creditor, Law has no debts left to discharge; but that will not often be the case.)  In addition, Federal Rule of Bankruptcy Procedure 9011—bankruptcy's analogue to Civil Rule 11—authorizes the court to impose sanctions for bad-faith litigation conduct, which may include "an order directing payment. . . of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation."  Fed. Rule Bkrtcy. Proc. 9011(c)(2).  The court may also possess further sanctioning authority under either §105(a) or its inherent powers.  Cf. *Chambers*, 501 U. S., at 45–49.  And because it arises postpetition, a bankruptcy court's monetary sanction survives the bankruptcy case and is thereafter enforceable through the normal procedures for collecting money judgments.  See §727(b).  Fraudulent conduct in a bankruptcy case may also subject a debtor to criminal prosecution under 18 U. S. C. §152, which carries a maximum penalty of five years' imprisonment.

But whatever other sanctions a bankruptcy court may impose on a dishonest debtor, it may not contravene express provisions of the Bankruptcy Code by ordering that the debtor's exempt property be used to pay debts and expenses for which that property is not liable under the Code.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*