**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No. NV-15-1307-DFB |
| ) | |
| WALLACE E. BLOCK, ) | Bk. No. 14-51415-BTB |
| ) | |
|         Debtor. ) | |
| _____ ) | |
| SAMUEL KORNHAUSER, ) | |
| ) | |
|         Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| WALLACE E. BLOCK; CHRISTINE ) | |
| LOVATO, Chapter 7 Trustee, ) | |
| ) | |
|         Appellees. ) | |
| _____ ) | |

Argued and Submitted on May 19, 2016
at Las Vegas, Nevada

Filed - June 3, 2016

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Bruce T. Beesley, Chief Bankruptcy Judge, Presiding

Appearances:    Gayle A. Kern argued for Appellant; Kevin Darby argued for Appellee Wallace E. Block.

Before:  DUNN, FARIS, and BARASH,[2] Bankruptcy Judges.

_____

[1]  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[2]  Hon. Martin R. Barash, United States Bankruptcy Judge for the Central District of California, sitting by designation.

The bankruptcy court overruled the objections of the chapter 7[3] trustee and a judgment creditor to the Nevada state law exemption that debtor claimed in his stock in two closely-held corporations to the extent those objections were based on debtor's alleged misconduct, debtor's allegedly improper amendment to his bankruptcy documents, judicial estoppel, or equitable estoppel. The judgment creditor appealed.

We AFFIRM.

## I.  FACTUAL BACKGROUND

A.  <u>Pre-Bankruptcy Facts</u>.

1.  <u>The Valentine Litigation</u>.

By written contract entered into on or about September 22, 2002, Wallace E. Block and his corporation, Life Enhancement Products, Inc. ("LEPI"), hired attorney Samuel Kornhauser to recover a 50% ownership interest in LEPI, which Mr. Block had gifted to Gayle Valentine, his former girlfriend, plus $70,000 Ms. Valentine had taken from LEPI. On March 25, 2005, to induce Mr. Kornhauser to continue providing legal services, Mr. Block and LEPI executed a promissory note ("Note") and pledge agreement in favor of Mr. Kornhauser, committing $450,000 in LEPI stock as security for payment of the Note.

Mr. Kornhauser successfully obtained the return to Mr. Block of Ms. Valentine's LEPI stock, a monetary award in favor of Mr. Block, and a complete defense to all of Ms. Valentine's

---

[3] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

claims against Mr. Block and LEPI. The litigation ("Valentine Litigation") took seven years to complete and required two jury trials and an appeal.

2. The Formation of SNF.

In 2006, while the Valentine Litigation was pending, Mr. Block incorporated Scientific Nutritional Formulations, LLC ("SNF"),[4] designating himself as SNF's sole officer and director. Mr. Block continued to be identified as SNF's sole officer and director in filings with the Nevada Secretary of State until February 2, 2011, when "Will Block" was substituted.[5] On June 8, 2012, SNF acquired commercial property ("Property") in Minden, Nevada consisting of a 16,800 square foot building on two acres. SNF leases the Property to LEPI.

3. The Kornhauser Litigation.

At the conclusion of the Valentine Litigation, Mr. Block and LEPI owed Mr. Kornhauser $750,000 for attorney's fees and $100,000 for costs Mr. Kornhauser had advanced. During the seven years of litigation, Mr. Block and LEPI made ongoing promises to pay the attorney's fees and costs that were accruing. However, after the Valentine Litigation concluded, Mr. Block and LEPI sued Mr. Kornhauser for legal malpractice, breach of contract, and breach of fiduciary duty, and Mr. Kornhauser asserted cross-claims against them for breach of contract, negligent

---

[4] In spite of the confusion of SNF's "LLC" name and the subsequent evidence as to how Mr. Block treated it, SNF in fact was incorporated as a Nevada corporation.

[5] Will Block appears to be an alias used by Mr. Block.

-3-

misrepresentation, fraud, quantum meruit, constructive trust and account stated (collectively, "Kornhauser Litigation"). Four years later, a jury denied all claims against Mr. Kornhauser and awarded Mr. Kornhauser $1,085,157 in damages, plus punitive damages and attorney's fees and costs. The following morning, before the judgment was entered against him, Mr. Block filed a petition under chapter 7 of the Bankruptcy Code.[6]

B.    Post-Bankruptcy Proceedings.

On his Schedule B-Personal Property ("Initial Schedule B"), Mr. Block disclosed that he held stock in LEPI and SNF. He valued his interest in the stock of both entities at $0. On his Schedule C-Property Claimed as Exempt ("Initial Schedule C"), Mr. Block asserted that his interest in the LEPI stock was exempt under Nevada Revised Statutes ("NRS") 21.090(1)(bb),[7] and that both the value of his claimed exemption and the current value of the stock were $0.

---

[6]    Judgment against LEPI only was entered a week later in the amount of $1,989,396.32. LEPI then filed its own bankruptcy case (Case No. 14-51572-btb7) in the District of Nevada. Mr. Kornhauser subsequently obtained relief from the automatic stay to seek a determination of the attorney's fees and costs to be included in the judgment. The new judgment amount was $2,422,063. Mr. Kornhauser filed a claim in LEPI's bankruptcy case (Case No. 14-51572-btb7), also pending in the District of Nevada, in the amount of $2,592,961.50.

[7]    Pursuant to § 522(b)(2), Nevada has opted out of the federal exemptions. See NRS 21.090(3); Rowe v. Jackson (In re Rowe), 236 B.R. 11, 13 (9th Cir. BAP 1999). This panel thus looks to Nevada state law rather than federal law to determine the allowance of Mr. Block's claimed exemption in stock. By its basic terms, NRS 21.090(1)(bb) provides that stock of a closely-held corporation is exempt from execution.

-4-

Mr. Kornhauser timely filed an objection ("Kornhauser Objection") to the exemption Mr. Block claimed in his LEPI stock for two reasons. First, Mr. Kornhauser asserted that Mr. Block could exempt no more than the value of the stock he claimed on the Initial Schedule B, which was $0. Second, Mr. Kornhauser asserted that even if Mr. Block otherwise could exempt the full value of his LEPI stock, he should be estopped from doing so because Mr. Block made a false oath in his schedules when he asserted that the LEPI stock had no value. The LEPI bankruptcy documents, filed five days after Mr. Block filed his Initial Schedule B, disclosed that LEPI had gross sales through its 2014 petition date of $2.6 million and liabilities estimated at $1.9 million.

In response to the Kornhauser Objection, Mr. Block amended the Initial Schedule B to reflect that the value of the LEPI stock was "Unknown" rather than $0 and the Initial Schedule C to claim an exemption in 100% of the fair market value of the LEPI stock, the current value of which he stated was "Unknown."

Before resolution of the Kornhauser Objection, the chapter 7 trustee ("Trustee") obtained an extension from the bankruptcy court to file her own objection to Mr. Block's claimed exemptions. As part of discovery into the basis for filing an objection, the Trustee, through counsel, requested tax information for SNF from Mr. Block, including its tax returns for the tax years 2012 and 2013, its taxpayer identification number, and a copy of the subchapter S election that had been filed with the IRS.

Four days later, in response to the Trustee's request,

Mr. Block again amended his Schedule B, this time to change the value of the SNF stock from $0 to "Unknown." Mr. Block also amended his Schedule C to include for the first time a claim for exemption in his SNF stock pursuant to NRS 21.090(1)(bb).

Ultimately, the Trustee objected ("Trustee Objection") only to Mr. Block's claim of exemption in SNF. The Trustee asserted that Mr. Block should be judicially and equitably estopped from claiming that he is entitled to an exemption under NRS 21.090(1)(bb) with respect to his equity interest in SNF for the reason that, from its inception, Mr. Block treated SNF not as a corporation but as an LLC. The Trustee asserted that SNF "did not operate as a corporation prepetition, has not adhered to the formalities of a corporation, and has not filed corporate tax returns." Significantly, Mr. Block claimed the rents and deductions of and from the Property on Schedule E of his personal tax returns, and he represented in every iteration of his bankruptcy documents that SNF was an LLC.

With respect to the Kornhauser Objection, the bankruptcy court determined that because Rule 1009(a) liberally allows a debtor to amend his bankruptcy documents "as a matter of course at any time before the case is closed," Mr. Block was not bound by his $0 valuation of his interest in LEPI stock in the Initial Schedule B and the Initial Schedule C. The bankruptcy court further ruled that it had no equitable power to deny or disallow Mr. Block's exemption in the LEPI stock based on Mr. Block's alleged bad faith conduct in light of the Supreme Court's decision in Law v. Siegel, ___ U.S. ___, 134 S.Ct. 1188 (2014).

With respect to the Trustee Objection, the bankruptcy court

-6-

determined (1) that judicial estoppel did not apply where the court had not "issued any rulings that were dependent upon the now-amended claim of exemption," and (2) that the state of Nevada has no procedure for allowing the denial or limitation of exemptions for bad faith. Finally, with regard to the issue of whether Mr. Block was entitled to claim an exemption in the stock of SNF because he treated SNF as a limited liability company and not as a true corporation required an adversary proceeding for a determination that SNF was the alter ego of Mr. Block.

The bankruptcy court entered its order overruling the Kornhauser Objection and the Trustee Objection on August 26, 2015.[8] Mr. Kornhauser filed a timely notice of appeal.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

Whether the bankruptcy court erred when it determined that Mr. Block's claimed exemption in LEPI stock was not limited to the $0 value initially listed on Schedule C.

Whether the bankruptcy court erred when it interpreted Law v. Siegel to hold that it had no equitable power to deny Mr. Block's claimed exemption in the LEPI and SNF stock based on Mr. Block's bad faith conduct, where Mr. Block's exemption was claimed under state law, not § 522.

---

[8] The order authorized both Mr. Kornhauser and the trustee to file an adversary proceeding for a determination whether SNF and LEPI were the alter egos of Mr. Block.

Whether the bankruptcy court erred when it ruled that Mr. Block had not waived the right to claim an exemption under NRS 21.090(1)(bb) in the SNF stock by treating SNF as a limited liability company rather than as a corporation.

## IV.  STANDARDS OF REVIEW

Application of basic rules of procedure and construction of the Bankruptcy Code present questions of law that we review de novo. All Points Capital Corp. v. Meyer (In re Meyer), 373 B.R. 84, 87 (9th Cir. BAP 2007).

The right of a debtor to claim an exemption is a question of law that we review de novo. Elliott v. Weil (In re Elliott), 523 B.R. 188, 191-92 (9th Cir. BAP 2014). We review a bankruptcy court's interpretation of state exemption law and the Bankruptcy Code de novo. Hopkins v. Cerchione (In re Cerchione), 414 B.R. 540, 545 (9th Cir. BAP 2009). De novo review requires that "we consider a matter anew, as if no decision had been rendered previously." Mele v. Mele (In re Mele), 501 B.R. 357, 362 (9th Cir. BAP 2013).

## V.  DISCUSSION

A.  The Bankruptcy Court Applied the Correct Law In Overruling the Kornhauser Objection and the Trustee Objection.

As a preliminary matter, we set in context the claim of an exemption in a bankruptcy case. The Bankruptcy Code requires a debtor to file a schedule of assets and liabilities. § 521(a)(1)(B)(ii). Rule 1007(b)(1)(A) directs that a chapter 7 debtor shall file schedules of assets and liabilities "prepared as prescribed by the appropriate Official Forms." At the time Mr. Block filed his bankruptcy case, Official Form 6B "Schedule B

-8-

- Personal Property" was the required form to use to schedule personal property assets. Using the Official Form 6B, Mr. Block filed his Initial Schedule B.

The Bankruptcy Code also permits an individual debtor to exempt property from property of the estate as defined by § 541. See § 522(b)(1). At the time Mr. Block filed his bankruptcy case, Official Form 6C "Schedule C - Property Claimed as Exempt" was the required form to use to claim an exemption from property of the bankruptcy estate. Using Official Form 6C, Mr. Block filed his Initial Schedule C.

The bankruptcy schedules provide important means by which disclosures are made regarding a debtor's affairs. As noted by the bankruptcy court, Rule 1009(a) provides that "[a] . . . schedule . . . may be amended by the debtor as a matter of course at any time before the case is closed."

Applying Rule 1009(a), the bankruptcy court correctly determined that Mr. Block could amend both his Initial Schedule B and his Initial Schedule C to claim an exemption greater than $0 in his stock.

However, as the Ninth Circuit previously has stated, "allowing an amendment claiming an exemption is different from allowing the exemption itself." Martinson v. Michael (In re Michael), 163 F.3d 526, 529 (1998) (quoting In re Sandoval, 103 F.3d 20, 22 (5th Cir. 1997)). We turn now to Mr. Kornhauser's issues regarding allowance of the claimed exemption.

**NRS 21.090(1)(bb)**

Mr. Kornhauser asserts that under NRS 21.090(1)(bb),

Mr. Block's exemption in the LEPI stock is limited to the amount claimed on his Initial Schedule C. NRS 21.090(1)(bb) simply provides an exemption in "[s]tock of a corporation described in subsection 2 of NRS 78.746 except as set forth in that section." NRS 78.746 provides the process pursuant to which a judgment creditor may obtain a charging order against stock held by a judgment debtor. NRS 78.746 incorporates the provisions of NRS 78.747, which defines when a stockholder acts as the alter ego of a corporation and provides that "[t]he question of whether a stockholder . . . acts as the alter ego of a corporation must be determined by the court as a matter of law."

Under Nevada law, exemption statutes must be liberally construed in favor of debtors. Christensen v. Pack, 149 P.3d 40, 43 (Nev. 2006). However, in this case, there is nothing for us to construe on this issue. Notably, nothing in any of the foregoing statutes provides any support to Mr. Kornhauser's position that NRS 21.090(1)(bb) somehow applies to limit Mr. Block's ability to amend his schedules to alter the amount of the exemption he is claiming in his stock.

**Schwab v. Reilly**

Mr. Kornhauser asserts that under Schwab v. Reilly, 560 U.S. 770, 792-94 (2010), Mr. Block's exemption in the LEPI stock is limited to the amount claimed on the Initial Schedule C. In Schwab v. Reilly, the debtor scheduled "equipment" with a value of $10,718 as a personal property asset on her Schedule B. She then claimed the full amount of that value exempt under § 522(d) on her Schedule C, but using two exemptions, each of which carried a dollar amount that statutorily could not be exceeded:

-10-

the tools of the trade exemption under § 522(b)(6) was limited to property within that category with an aggregate value not to exceed $1,850, and a "wildcard" exemption under § 522(b)(5) limited to property not to exceed $10,225 in value. The debtor claimed the full $1,850 value under § 522(b)(6) and the balance of the $10,718 value of the equipment or $8,868 under § 522(b)(5). The trustee did not object to the debtor's exemptions claimed in the equipment. The trustee did, however, seek permission from the bankruptcy court to auction the equipment after obtaining an appraisal that showed that the value of the equipment was $17,200. The debtor opposed, asserting that because she had equated the value of the exemptions with her estimate of the market value of the equipment, she had put creditors on notice of her intent to exempt the full value of the exemptions, even if the value turned out to be more than she had estimated. The debtor asserted that the estate had forfeited its right to any value that exceeded the amount of the claimed exemptions because the trustee did not timely object to her exemptions. The Supreme Court determined that the trustee was not required to object to the exemptions in order to preserve the bankruptcy estate's right to retain any value in the equipment beyond the value of the claimed exempt interest.

Schwab v. Reilly does not support the proposition asserted by Mr. Kornhauser in two important ways. First, the exemption provided by NRS 21.090(1)(bb) is not limited in amount. Second, and more importantly, nothing in Schwab v. Reilly suggests that Mr. Block was not allowed to amend his Schedule C to change the amount claimed exempt from $0.

-11-

**Law v. Siegel**

In Law v. Siegel, the Supreme Court determined broadly that the Bankruptcy Code does not provide bankruptcy courts with a general, equitable power to deny exemptions based on a debtor's bad faith conduct. In Elliott v. Weil (In re Elliott), 523 B.R 188, 194 (9th Cir. BAP 2014), this panel interpreted Law v. Siegel to instruct that bankruptcy courts "can no longer deny claimed exemptions **or bar amendments to exemptions** on the ground that the debtor acted in bad faith, when no statutory basis exists for doing so." (Emphasis added.)

Mr. Kornhauser asserts that the bankruptcy court erred when it applied Law v. Siegel in determining that it could not preclude Mr. Block from asserting an exemption based on any bad faith conduct, because the exemption at issue was claimed under Nevada law, not under § 522(d). "It is of course true that when a debtor claims a *state-created* exemption, the exemption's scope is determined by state law, **which may provide that certain types of debtor misconduct warrant denial of the exemption**." Law v. Siegel, 134 S.Ct. at 1196-97 (italic emphasis in original; bold emphasis added). We observe that Mr. Kornhauser appears to have overlooked our emphasized language from the Supreme Court quote. As determined by the bankruptcy court, and as discussed above, nothing in the Nevada statutory scheme appears to preclude a claim of exemption under NRS 21.090(1)(bb) based upon bad faith conduct of Mr. Block.

Mr. Kornhauser asserts that Nevada law equitably estops a debtor with unclean hands from seeking the aid of a court to claim an exemption, citing Las Vegas Fetish & Fantasy Halloween

Ball, Inc. v. Ahern Rentals, Inc., 182 P.3d 764, 766-67 (Nev. 2008). However, in Ahern Rentals, a case involving a contract dispute, the Nevada Supreme Court emphasized that the unclean hands doctrine is not a per se rule in Nevada. Id. at 276.

Mr. Kornhauser has cited no Nevada case which explicitly makes the unclean hands doctrine applicable to claims of exemption. To the contrary, the Nevada Supreme Court has held in the exemption context that the plain language of the statute controls. Weinstein v. Fox (In re Fox), 302 P.3d 1137, 1140 (Nev. 2013) (in construing exemption statute the court must neither depart from the statutory language nor extend the legislative grant). Here, the language of NRS 21.090(1)(bb) does not include any exception to the right to claim the exemption based on the claimant's "bad faith."

Therefore, in light of Ahern Rentals and Fox, we determine that equitable doctrines do not apply to limit claims to the exemption allowed in NRS 21.090(1)(bb).

**Alter ego**

Mr. Kornhauser's final issue on appeal is that the bankruptcy court erred when it ruled that Mr. Block had not waived the right to claim an exemption under NRS 21.090(1)(bb) in the SNF stock by treating SNF as a limited liability company rather than as a corporation. We do not reach this issue.

In his opening brief, Mr. Kornhauser acknowledged that the bankruptcy court had preserved his right and that of the trustee to file and proceed with an adversary proceeding to determine whether LEPI and SNF are alter egos of Mr. Block under NRS 78.747, which would warrant disallowance in whole or in part

-13-

of Mr. Block's claim of exemption in stock under NRS 21.090(1)(bb). "Kornhauser does not object to, or appeal from, that portion of the Bankruptcy Court Decision." Opening Brief at 1:7-8.

## VI.  CONCLUSION

The bankruptcy court correctly determined that Mr. Block could amend his bankruptcy schedules as a matter of course to alter the value of the stock he claimed exempt under NRS 21.090(1)(bb).  Accordingly, the bankruptcy court did not err when it determined that the amount of Mr. Block's exemption was not limited to $0.  Further, the bankruptcy court did not err when it refused to preclude Mr. Block from claiming an exemption greater than $0 in the stock where Law v. Siegel makes clear the bankruptcy court has no general equitable authority to do so and where Nevada state law does not so provide.

We AFFIRM the bankruptcy court's order overruling the Kornhauser Objection and the Trustee Objection.