Thomas B. McNamara, United States Bankruptcy Judge
This matter comes before the Court on the "Motion to File Under Seal a Motion for an Order (I) Authorizing Retention of Counsel; (II) Approving the Funding Agreement in the Interim, Prior to Final Approval of the Unsealed Motion upon Notice to Creditors; and (III) Authorizing Sealed Discovery" (Docket No. 36, the "Motion to Seal"), filed by Chapter 7 Trustee Dennis W. King (the "Trustee"). Since the Motion to Seal was itself filed under seal, neither the Debtors, the United States Trustee, nor any other party in interest has had an opportunity to review, consent to, or oppose the Motion to Seal.
I. Procedural Background.
The Debtors, Timothy J. Petersen and Katherine M. Petersen (together, the Debtors"), filed for protection under Chapter 7 of the Bankruptcy Code[1] on February 23, 2018. (Docket No. 1.) Thereafter, the United States Trustee appointed Dennis W. King as the Chapter 7 Trustee for the Debtors' bankruptcy estate. (Docket Nos. 11 and 15.) The bankruptcy proceedings have not been especially active. The Trustee requested and received authorization to conduct examinations of both of the Debtors under Fed. R. Bankr. P. 2004. (Docket Nos. 26 and 29.) Two sets of creditors filed nondischargeability actions against the Debtors under Section 523. (Docket Nos. 31 and 32.) And, the Court entered an Order discharging both Debtors under Section 727. (Docket No. 24.) About a year after the commencement of the Bankruptcy Case, the Trustee filed the Motion to Seal.
II. The Motion to Seal.
Through the Motion to Seal, the Trustee requests quite extraordinary relief. First, the Trustee requests that he be authorized *436 to file under seal a motion to employ the law firm of Holland & Knight (the "Law Firm") as counsel to the Trustee for investigating and collecting assets of the estate. The Law Firm and its lawyers hold themselves out as being especially savvy in asset tracing and international transfers. Second, the Trustee requests that he be allowed to file a secret motion to approve, on an interim basis, a "Funding Agreement" (defined in the Motion to Seal at 3). The Funding Agreement is a contract between the Trustee and creditors Thomas Roche, Matthew Notter, and William Fisher, pursuant to which one of the creditors (Thomas Roche) has agreed "to guarantee the payment of the Trustee's legal costs incurred by Holland & Knight LLP up to a total of $ 100,000 in billed fees and costs, after which further expenditure will require [the creditor's] further written consent." Third, the Trustee requests that he be permitted to file under seal a motion authorizing covert discovery "by issuing subpoenas to [unidentified] third-party banks in New York." Motion to Seal at 1-2. To reiterate, in the Motion to Seal, the Trustee does not request actual approval of the attorney retention, credit arrangement, or secret discovery; instead, at this stage, the Trustee only asks for permission to file such future potential motions under seal to avoid the Debtors learning about the Trustee's proposed investigation and collection activities.
In support of the Motion to Seal, the Trustee submitted Declarations from: (1) the Trustee; (2) Law Firm attorney Warren E. Gluck; and (3) creditor Thomas Roche. (Docket Nos. 37, 38, and 39.) All of the Declarations also were filed under seal. The Declarations purport to provide the factual support for the Motion to Seal.
In his Declaration, the Trustee states: "As discussed in the Declarations, an investigation of the Debtor's non-United States assets revealed significant sums in foreign bank accounts that the Debtors failed to disclose in this proceeding." Trustee Decl. at 2-3. But, the Trustee himself provides no concrete information about the alleged foreign bank accounts. Nevertheless, the Trustee stated: "I believe that this Motion should be filed under seal .... Without sealing the motions, [Thomas] Roche's strategy for discovery will be compromised if the Debtors learn of the [Law] Firm's enforcement efforts before such efforts are officially executed." Trustee Decl. at 3. The Trustee provides no particularized evidence suggesting how Thomas Roche's discovery "will be compromised." The Trustee further confirmed that he executed the Funding Agreement.
Creditor Thomas Roche's Declaration is a bit lengthier. He recited that "between 2013 and 2017," he, William Fisher, and Matthew Notter "loaned roughly $ 700,000 to Timothy Petersen and companies he controlled." Roche Decl. at 3. The debt was "consolidated" into a Promissory Note made by Wild Calling Pet Foods, LLC ("Wild Calling"), and guaranteed by one of the Debtors, Timothy Peterson, who was the CEO of Wild Calling. Id. Mr. Roche asserted that Wild Calling diverted some of the loaned funds to another entity controlled by Timothy Peterson. Id. As a result, he claimed that Wild Calling and Timothy Peterson are indebted to him and the other lenders. Mr. Roche (and others) filed an Adversary Proceeding to obtain a declaration that such debt is nondischargeable under Section 523. Id. Trying to collect the debt, Mr. Roche apparently developed "Roche's strategy for discovery" and entered into the Funding Agreement. Id. at 4-5. He alleged: "With the assistance of [the Law Firm], myself and Mr. Fisher engaged a third-party specialist to undertake a confidential, worldwide investigation of Debtors' real and personal assets. The investigation revealed that the Debtors *437 failed to disclose multiple bank accounts held in Switzerland and Andorra, which as of September 2018, maintained total balances of roughly $ 2 million." Id. at 5. Notably, Mr. Roche did not identify the "third-party specialist" or the specific details about the "multiple bank accounts."
Warren E. Gluck, a lawyer at the Law Firm, submitted the final Declaration. He purports to be an asset collection specialist. In the Declaration, he advised that the use of discovery subpoenas "will confirm (or deny) the existence of the foreign-based bank accounts of the Debtors identified by the Roche investigation." Gluck Decl. at 1. Thus, unlike Thomas Roche, Mr. Gluck seems more equivocal regarding the existence of the alleged foreign bank accounts. In any event, Mr. Gluck explained that he worked on another asset investigation and collection matter in which another Bankruptcy Court allowed various motions and orders to be sealed. Id. at 3-4. Then, Mr. Gluck opined that: "sealing is necessary here because the Petersen Estate's recovery will likely be compromised if the Petersens learn of the pending investigation and enforcement effort before it is commenced." Id. at 4. To bolster his view, Mr. Gluck refers to the allegations in Mr. Roche's nondischargeability action. Id.
In support of the Motion to Seal, the Trustee relies only upon two statutes and a procedural rule: Sections 107(b) and 105(a); and Fed. R. Bankr. P. 9018. Motion to Seal at 1 and 5-9. Further, the Trustee references a series of reported and unreported decisions, most of which are inapposite.
III. Legal Conclusions.
Public access is a foundational attribute of the Federal Judiciary. As a matter of federal common law, "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." Nixon v. Warner Commc'ns, Inc. , 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). The right of public access is "rooted in the public's First Amendment right to know about the administration of justice." Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.) , 21 F.3d 24, 26 (2d Cir. 1994) ; see also In re Inslaw, Inc. , 51 B.R. 298, 299 (Bankr. D.C. 1985) ("Public access to judicial records is 'fundamental to a democratic state' "). Put another way, the policy requiring public access in judicial proceedings is based on "the public's right to monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system." Matter of Continental Illinois Sec. Litig. , 732 F.2d 1302, 1308 (7th Cir. 1984).
When Congress enacted the Bankruptcy Code in 1978, it gave the long-standing federal common law of public access to judicial records a statutory boost. 11 U.S.C. § 107"establishes a broad right of public access, subject only to limited exceptions set forth in the statute, to all papers filed in a bankruptcy case .... [T]he coverage of Section 107(a) is 'sweeping.' " Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.) , 422 F.3d 1, 6 (1st Cir. 2005). Section 107 provides:
(a) Except as provided in subsections (b) and (c) and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.
(b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may-- *438 (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
(2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.
(c)(1) The bankruptcy court, for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property:
(A) Any means of identification (as defined in section 1028(d) of title 18) contained in a paper filed, or to be filed, in a case under this title.
(B) Other information contained in a paper described in subparagraph (A).
(2) Upon ex parte application demonstrating cause, the court shall provide access to information protected pursuant to paragraph (1) to an entity acting pursuant to the police or regulatory power of a domestic governmental unit.
(3) The United States trustee, bankruptcy administrator, trustee, and any auditor serving under section 586(f) of title 28-
(A) shall have full access to all information contained in any paper filed or submitted in a case under this title; and
(B) shall not disclose information specifically protected by the court under this title.
The bottom line is that all papers filed in a bankruptcy case presumptively are public records and open to examination. The statute identifies only very few exceptions for which redacting or sealing records may be appropriate. And, the Trustee bears the burden to establish the existence of an applicable exception. Neal v. Kansas City Star (In re Neal) , 461 F.3d 1048, 1053-4 (8th Cir. 2006).
In this case, the Trustee failed to identify any specific part of Section 107(b) permitting a secret process that would allow motions and orders to be filed under seal. Motions to retain counsel, approve credit agreements (such as the Funding Agreement), and permit discovery are common motions filed as a matter of public record in almost every bankruptcy proceeding in this jurisdiction. Turning to the statutory text, such motions and their content are not "trade secret[s]." Neither are they "confidential research, development, or commercial information." 11 U.S.C. § 107(b)(1). And, filing such motions under seal is not necessary to "protect a person with respect to scandalous or defamatory matter." 11 U.S.C. § 107(b)(2). In other words, the Trustee does not identify any statutory exceptions to public access that would permit the Court to seal the Motion to Seal and future motions and orders under Section 107(b). Given the text and structure of Section 107, ordinary principles of statutory interpretation (including the negative-implication cannon) dictate that there are no exceptions to public records access in bankruptcy cases other than those listed expressly in Section 107 or another statute. See Antonin Scalia and Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 107 (Thompson/West 2012).
The statutory mandate of broad public access under Section 107 also is supported by the procedural framework of Fed. R. Bankr. P. 9018 and 9037. Rule 9018 states:
On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to *439 protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect an entity against scandalous or defamatory matter contained in any paper filed in a case under the Code, or (3) to protect governmental matters that are made confidential by statute or regulation.
The procedural rule parrots the statute and does not give the Court free reign to "make any order which justice requires." Instead, the rule is circumscribed and applies only in very limited circumstances not present in this case. Fed. R. Bankr. P. 9037 (which the Trustee does not reference) also allows some redactions and privacy protection but pertains only to confidential personal financial information such as social security numbers, birth dates, and financial-account numbers. It provides no basis for the Motion to Seal.
Perhaps recognizing that Section 107(b) and Fed. R. Bankr. P. 9018 do not really support the Trustee's argument, the Trustee makes a last pitch under Section 105(a), which states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Section 105(a) is a catch-all; but, it does not give the Bankruptcy Court carte blanche to do whatever it wants. And, Section 105(a) cannot justify any action to "contravene the express provisions of the [Bankruptcy] Code." Law v. Siegel , 571 U.S. 415, 134 S.Ct. 1188, 1197, 188 L.Ed.2d 146 (2014). In this case, since Section 107 directly addresses public access to judicial records and lists the only exceptions, Section 105(a) cannot be used as a basis for conjuring up another public access exception based on the Trustee's supposition that the Debtor might abscond with property.
In addition to the statutes and the procedural rule, the Trustee refers to many decisions in its Motion to Seal. Most confirm that Section 107(b) only applies to information falling within one of the limited categories listed in the statute. See Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.) , 21 F.3d 24, 27 (2nd Cir. 1994) ("if the information fits any of the specified categories [of Section 107(b) ], the court is required to protect a requesting interested party") (emphasis added); In re Global Crossing Ltd. , 295 B.R. 720, 724 (Bankr. S.D.N.Y. 2003) ("When the requirements of Rule 9018 are satisfied ...."; finding certain information was protected because it was "commercial"). So, they do not help the Trustee. But two decisions referenced by the Trustee are more on point and deserve further consideration: In re 4 Front Petroleum, Inc. , 2007 WL 3005183 (Bankr. N.D. Okla. Oct. 11, 2007) and In re Kumar , Case No. 11-15802-RAM (Bankr. S.D. Fla. 2011).
In Front Petroleum , as in this case, the trustee submitted a motion for permission to file a motion to employ counsel under seal. The Oklahoma bankruptcy judge granted the motion. The short decision (just two paragraphs in length) does reference Section 107(b) and Fed. R. Bankr. P. 9018. But, the court in Front Petroleum simply does not explain how a motion to employ counsel falls within the statutory language. Instead, the focus of the decision seems to be on attorney-client privilege and work product issues. Apparently, the motion to employ "contain[ed] information that [was] privileged or constitutes work product." Front Petroleum , 2007 WL 3005183 at *1. In this case, there is no allegation that the Motion to Seal and the other proposed motions contain attorney-client communications or work product. But, in the end, the Court simply finds the Front Petroleum decision not to be compelling in the context of this case.
*440 The Trustee references Kumar throughout the Motion to Seal and Gluck Declaration. As best the Court understands the unreported case, the trustee filed two motions to seal a motion for sale of a judgment under Section 363 of the Bankruptcy Code. As support, the trustee recited: "Movant believes that immediate, substantial and irrevocable harm would result if the Motion to Approve is not filed under seal." The trustee claimed that if the judgment defendant were alerted to the sale of the judgment then the judgment defendant "would very likely gather its holdings and utilize protections of its offshore venue ... to obstruct collection efforts ...." On this meagre record, the Florida bankruptcy judge entered two orders allowing the motion for sale of a judgment to be sealed. Both of the unreported orders are bereft of any legal analysis. They do not mention, much less consider, Section 107(b) or Fed. R. Bankr. P. 9018. Instead, the form orders seem to have been submitted by counsel and merely "stamped" and signed "ORDERED" by the bankruptcy judge. The Court finds that unreported orders with no legal analysis, like the Kumar orders, are unpersuasive.
In the end, the Court denies the Motion to Seal because the Trustee failed establish a legal basis for sealing the proposed motions and orders under Sections 107(b) and 105.[2] But, there are several other reasons why the Motion to Seal fails.
The Trustee has not established an adequate factual basis for such extraordinary relief. Instead, the Court has been presented mostly with surmise. All the Trustee really has shown is that the Debtors might have foreign bank accounts and if the Trustee followed the normal course for prosecuting his motions, the Debtors might abscond with bankruptcy estate funds. But, this is simply conjecture that could apply in virtually every bankruptcy case. Furthermore, a series of civil and criminal statutes already are in place prohibiting debtors from stealing estate funds. See 11 U.S.C. § 521(a)(4) ("The debtor shall ... surrender to the trustee all property of the estate ..."); 11 U.S.C. § 542 (requiring turnover of property to the estate); 18 U.S.C. § 152 (crime of concealment of assets in bankruptcy); 18 U.S.C. § 153 (crime of embezzlement of property belonging to bankruptcy estate); and 18 U.S.C. § 157 (crime of bankruptcy fraud). And, any bankruptcy discharge also may be revoked in such circumstances. 11 U.S.C. § 727.
Furthermore, the path suggested by the Trustee is contrary to other statutes and procedural rules. For example, with respect to filing the motion to employ the Law Firm, Fed. R. Bankr. P. 2014 provides that "the application shall be filed and ... a copy of the application shall be transmitted by the applicant to the United States trustee." The sealing request is antithetical to such rule.
With respect to the proposed motion to approve the Funding Agreement, that motion is a disguised request for credit governed by Section 364. Section 364(b) allows the Court to authorize the Trustee to obtain unsecured credit but only "after notice and a hearing." And, Fed. R. Bankr. P. 4001(c) requires that such motions be sent out on notice with an opportunity for parties in interest to object and request a hearing. The Trustee ignores such requirements by proposing a secret credit agreement with three creditors.
Finally, the Trustee appears to propose a hidden discovery process whereby he may send subpoenas without notice (i.e. , *441 "sealed discovery"). The Trustee does not identify the legal basis for authorizing such subpoenas. However, since the Trustee is not a party to any pending Adversary Proceeding against the Debtors, the Trustee presumably intends to rely on Fed. R. Bankr. P. 2004 and 9016, which incorporate Fed. R. Civ. P. 45. Rule 45(a)(4) states:
Notice to Other Parties Before Service. If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of the premises before trial, then before it is served on the person to whom it is directed, a notice and copy of the subpoena must be served on each party.
The secret discovery proposed by the Trustee violates the procedural requirement of notice.
The Court recognizes that the Trustee is trying to do his best to "collect and reduce to money property of the estate" under Section 704(a)(1). His efforts to collect funds are to be commended. However, his proposed methods cannot be approved.
Therefore, on this record, the Court DENIES the Motion to Seal.
However, to preserve the status quo and the Trustee's appellate rights, the Court ORDERS that this Order shall be kept under seal temporarily for thirty (30) days. Unless a further order is issued by this Court or an appellate court otherwise, at the expiration of thirty (30) days from the date of this Order, then this Order shall be unsealed and become a public record available for public review. At that time, the Court will also unseal the Motion to Seal and the accompanying Declarations.

All references to the "Bankruptcy Code" are to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. Unless otherwise indicated, all references to "Section" are to sections of the Bankruptcy Code.

Sections 107(b) and 105 are the only sections of the Bankruptcy Code referenced by the Trustee. He did not make any extra-statutory or common law argument.