[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10944
_____

D.C. Docket Nos. 6:17-cv-00459-RBD; 6:15-bkc-01720-KSJ

In re:

KEITH A. YERIAN,

Debtor.

_____

KEITH A. YERIAN,

Defendant-Appellant,

versus

RICHARD B. WEBBER II, as Trustee,

Plaintiff-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 26, 2019)

Before MARCUS, GRANT, and HULL, Circuit Judges.

GRANT, Circuit Judge:

Keith Yerian made some interesting choices with respect to the management of his individual retirement account. These choices included titling IRA-owned cars in his own name and his wife's name, as well as purchasing a condo in Puerto Rico with IRA funds and then using the condo for his personal travel needs. Yerian concedes that he incurred over one hundred thousand dollars in tax penalties for abusing his IRA. Ordinarily, that abuse would disqualify him from claiming the wide range of favorable treatment and exemptions typically offered to IRAs. But Yerian—now in bankruptcy proceedings—nonetheless seeks to shield the IRA from distribution to his creditors. He argues that Florida has exempted IRAs from bankruptcy administration so long as they were originally established with proper documentation. Fortunately for Yerian's creditors, and unfortunately for him, his interpretation of the text cannot be supported; he forfeited his exemption when he engaged in self-dealing transactions prohibited by the IRA's governing instruments. We therefore affirm the district court's order, which in turn upheld the bankruptcy court's decision to deny the exemption.

I.

A.

When a debtor files for Chapter 7 bankruptcy, his assets become property of the bankruptcy estate, to be distributed among his creditors. *See* 11 U.S.C. § 541(a)(1). The debtor may, however, exempt certain types of property from the estate. 11 U.S.C. § 522(b). Exempt assets are "withdrawn from the estate (and hence from the creditors) for the benefit of the debtor." *Owen v. Owen*, 500 U.S. 305, 308 (1991). A Chapter 7 debtor is not required to turn over exempt assets to

2

the trustee and can keep them after the bankruptcy case is finished.  And these carve-outs are sturdy; once a debtor invokes an exemption, a "court may not refuse to honor the exemption absent a valid statutory basis for doing so." *Law v. Siegel*, 134 S. Ct. 1188, 1196 (2014).

The bankruptcy code provides a list of federal exemptions, but also permits a state to opt out and replace the federal blueprint with an exemption scheme of its own.  11 U.S.C. § 522(b).  Florida, as an opt-out state, has accepted that invitation to substitute its own set of exemptions.  *See* Fla. Stat. § 222.20; *In re Valone*, 784 F.3d 1398, 1400 n.1 (11th Cir. 2015).  One of those exemptions applies to "pension money and certain tax-exempt funds or accounts"—including IRAs—so long as a debtor meets certain statutory requirements.  Fla. Stat. § 222.21.  It is this exemption that we consider here.

## B.

The relevant facts are not in dispute.  In 2012, Keith Yerian opened a self-directed IRA with IRA Services Trust Company.  The IRA's primary asset was an LLC through which Yerian purchased, among other things, real estate and two used cars.  Yerian established this account as an IRA, "but then treated the money as his own."  He used IRA funds to buy a condominium in Puerto Rico, for example, then impermissibly stayed there "for an un-IRA-related purpose."  He and his wife also took title to two cars, a Smart Car and a Suburban, both purchased with IRA funds.  Yerian then spent thousands of IRA dollars on car

3

repairs, and he allowed his wife to drive the Suburban "as her vehicle."[1]  He does not contest that these acts of self-dealing constituted "prohibited transactions" under the Internal Revenue Code and thus made his IRA ineligible for federal tax-exempt status as of January 1, 2014.

On February 27, 2015, Yerian filed for Chapter 7 bankruptcy.  After failing to disclose his IRA on the asset schedules originally accompanying his petition, Yerian eventually amended his filings to disclose the IRA—and also to claim a Florida-law exemption for it.  Richard Webber, the bankruptcy Trustee, objected to the claim of exemption and initiated an adversary proceeding to resolve the issue.[2]  After a two-day trial in late 2016, the bankruptcy court issued oral findings of fact and conclusions of law.  Concluding that Florida law does not allow a debtor to claim an exemption for an IRA operated in violation of the federal tax code, the bankruptcy court issued a written order sustaining the Trustee's objection and directing the Trustee to seize the IRA on behalf of Yerian's creditors.  Yerian sought review of the order denying his claim for the IRA exemption, and the district court affirmed.  This appeal followed.

---

[1] According to his wife, Yerian would sometimes drive the Suburban as well.  As for the Smart Car, Yerian claims that he "bought it totaled" and was never able to drive it.

[2] The bankruptcy court also addressed two other issues at trial: whether the Trustee could avoid and recover as a fraudulent transfer any part of a $256,000 payment that Yerian made to his wife from their joint e-trading account, and whether Yerian's discharge should be denied because he acted with fraudulent intent in his bankruptcy proceedings.  The fraudulent transfer is the subject of a separate appeal brought by Yerian's wife. *See Pak v. Webber* (*In re Yerian*), 2018 WL 4836776 (Bankr. M.D. Fla. Sept. 28, 2018).  The bankruptcy court denied Yerian's bankruptcy discharge, and he has not challenged that decision in this appeal.

II.

In a bankruptcy appeal, this Court "sits as a second court of review and thus examines independently the factual and legal determinations of the bankruptcy court and employs the same standards of review as the district court." *In re Hood*, 727 F.3d 1360, 1363 (11th Cir. 2013) (internal quotation marks and citation omitted). Accordingly, we "review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo." *Id.* We may affirm the judgment below on any ground supported in the record. *See Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018).

"Generally speaking, courts construe bankruptcy exemption statutes—both state and federal—liberally in favor of bankruptcy debtors." *In re McFarland*, 790 F.3d 1182, 1186 (11th Cir. 2015). The "burden is on the party objecting to exemptions to prove, by a preponderance of evidence," that the exemption cannot be claimed. *Id.* (citing Fed. R. Bankr. P. 4003(c)). It is therefore the Trustee's burden to prove that Yerian was not entitled to shield his IRA under Florida law.

III.

Yerian contends that section 222.21(2)(a)(2) of the Florida Statutes places his IRA beyond the reach of his creditors. Under that provision, a debtor may exempt from bankruptcy administration any money in "a fund or account" that is

> [m]aintained in accordance with a plan or governing instrument that has been determined by the Internal Revenue Service to be exempt from taxation under s. 401(a), s. 403(a), s. 403(b), s. 408, s. 408A, s. 409, s. 414, s. 457(b), or s. 501(a) of the Internal Revenue Code of 1986, as amended, unless it has been subsequently determined that the plan or governing instrument is not

5

exempt from taxation in a proceeding that has become final and nonappealable.

Fla. Stat. § 222.21(2)(a)(2) (footnote omitted).

Section 408 of the Internal Revenue Code is the relevant provision in this case. That statute, among other things, sets out the requirements for an IRA to receive tax-exempt status under federal law. *See* 26 U.S.C. § 408. Section 408 first sets out six minimum requirements for the terms of the "written governing instrument" that legally establishes the IRA. *See id.* § 408(a). These requirements are important, but may read as rather arcane to the uninitiated. They range from permitting only cash contributions (and only in an amount corresponding to the limit in effect for that taxable year), to mandating particular rules relating to incidental death benefits. *See id.* § 408(a)(1)–(6). We will not belabor these requirements, however, because none of them are directly at issue here.[3] The

---

[3] For those who are curious, the "written governing instrument" creating the IRA must include the following six requirements:

> (1) Except in the case of a rollover contribution described in subsection (d)(3) or in section 402(c), 403(a)(4), 403(b)(8), or 457(e)(16), no contribution will be accepted unless it is in cash, and contributions will not be accepted for the taxable year on behalf of any individual in excess of the amount in effect for such taxable year under section 219(b)(1)(A).
> (2) The trustee is a bank (as defined in subsection (n)) or such other person who demonstrates to the satisfaction of the Secretary that the manner in which such other person will administer the trust will be consistent with the requirements of this section.
> (3) No part of the trust funds will be invested in life insurance contracts.
> (4) The interest of an individual in the balance in his account is nonforfeitable.
> (5) The assets of the trust will not be commingled with other property except in a common trust fund or common investment fund.
> (6) Under regulations prescribed by the Secretary, rules similar to the rules of section 401(a)(9) and the incidental death benefit requirements of section 401(a) shall apply to the distribution of the entire interest of an individual for whose benefit the trust is maintained.

6

upshot is that an IRA is only tax exempt in the first place if it satisfies "a number of requirements imposed by the Internal Revenue Code." *Rousey v. Jacoway*, 544 U.S. 320, 322 (2005).

Section 408 also sets out rules for how an IRA must be operated in order to *keep* its tax-exempt status. One way an IRA can lose its tax-exempt status is for the IRA owner to engage in "prohibited transactions"—a category that includes "abuses" placing the plan at risk of loss before retirement, as well as various acts of "self-dealing." 26 U.S.C. § 408(e)(2); *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 160 (1993); *Ellis v. Comm'r*, 787 F.3d 1213, 1217 (8th Cir. 2015).[4] This provision turns out to be relevant here.

---

26 U.S.C. § 408(a).

[4] Section 408 provides that if,

> during any taxable year of the individual for whose benefit any individual retirement account is established, that individual or his beneficiary engages in any transaction prohibited by section 4975 with respect to such account, such account ceases to be an individual retirement account as of the first day of such taxable year.

26 U.S.C. § 408(e)(2)(A). Section 4975, in turn, defines a "prohibited transaction" as any direct or indirect—

> (A) sale or exchange, or leasing, of any property between a plan and a disqualified person;
> (B) lending of money or other extension of credit between a plan and a disqualified person;
> (C) furnishing of goods, services, or facilities between a plan and a disqualified person;
> (D) transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan;
> (E) act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interest or for his own account; or
> (F) receipt of any consideration for his own personal account by any disqualified person who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan.

Turning to the conduct in this case, Yerian does not contest that he engaged in prohibited transactions—for instance, taking title to the IRA's car and staying in the IRA's condominium—and that when he did so, his IRA lost its tax-exempt status under § 408.  Nevertheless, Yerian argues that his IRA is still *creditor* exempt under section 222.21(2)(a)(2).  In his view, the Florida exemption statute shields even an IRA operated in violation of the federal tax code, so long as the form of the IRA's governing instrument satisfies the requirements of § 408(a) on paper.  The Trustee disagrees, and so do we.  And because we have not had occasion to interpret section 222.21(2)(a)(2) since it was amended to include the language at issue, we take this opportunity to explain the mechanics of the statute in some detail.

We start with an observation about the statute's structure.  Section 222.21 of the Florida Statutes imposes different exemption requirements on different IRAs, depending on whether and how the Internal Revenue Service has signed off on the IRA's terms.  Section 222.21(2)(a)(1) applies if the IRA's terms have been "*preapproved* by the Internal Revenue Service as exempt from taxation."  Section 222.21(2)(a)(2) applies if the IRA's terms have been "*determined* by the Internal Revenue Service to be exempt from taxation."  And if the IRS has neither preapproved nor determined that the IRA's terms comply with the tax code, the debtor must seek an exemption under section 222.21(2)(a)(3).  Fla. Stat. § 222.21(2)(a)(1)–(3) (emphases added).

---

26 U.S.C. § 4975(c)(1).

We are tasked with interpreting only section 222.21(2)(a)(2), the second of these three provisions.  Under Florida law, Yerian would be entitled to claim an exemption for his IRA under section 222.21(2)(a)(2) if three requirements were met:

(1) The IRA's plan or governing instrument was initially "determined by the [IRS] to be exempt from taxation" under § 408;

(2) Over time, the IRA has been "maintained in accordance with" that plan or governing instrument; and

(3) No final and nonappealable proceeding has "subsequently determined" that the plan or governing instrument is no longer exempt from taxation under § 408.

As to the first requirement, the record does not indicate whether Yerian ever obtained an IRS determination that his IRA's governing instrument satisfied § 408. But it is the Trustee who must demonstrate that an exemption is inapplicable, and the Trustee has not challenged the exemption on that ground.  *See McFarland*, 790 F.3d at 1186.  We reiterate, however, that different subsections of section 222.21(2)(a) apply to funds that have been "determined by the [IRS] to be exempt from taxation," Fla. Stat. § 222.21(2)(a)(2), "preapproved by the [IRS] as exempt from taxation," *id.* § 222.21(2)(a)(1), or neither, *id.* § 222.21(2)(a)(3).  This classification matters because a fund in the third category—that is, one that has neither been determined nor preapproved by the IRS to be tax exempt—must satisfy a different set of requirements in order to be eligible for a creditor

9

exemption. But again, because the parties here agree that Yerian properly invoked section 222.21(2)(a)(2), we examine the matter no further.

The third requirement—that no final and nonappealable proceeding has declared that Yerian's IRA is no longer tax-exempt—is satisfied as well. It is settled law that a "claim of exemption is to be determined as of the petition date." *In re Fodor*, 339 B.R. 519, 521 (Bankr. M.D. Fla. 2006). And it is clear from the record before us that, prior to Yerian's bankruptcy petition date, no final and nonappealable proceeding—before the IRS or any court—had determined that his IRA's governing instrument was no longer exempt under the tax code.[5]

Accordingly, Yerian's claim for exemption turns on whether the second requirement is satisfied—that is, whether his IRA was "maintained in accordance with" the "plan or governing instrument" that the IRS had determined was exempt from taxation under § 408's requirements.[6] We pause here to note a misstep in the opinion of the district court. Echoing the bankruptcy court, the district court interpreted the statute to require that an IRA be "maintained in accordance with IRC § 408" in order to be exempt from creditors. But rather than focusing on congruity with federal statutory requirements, the Florida statute says that to be exempt, an IRA must be "maintained in accordance with *a plan or governing*

---

[5] The parties spar over whether an unfavorable determination by a bankruptcy court, as opposed to by "the IRS or a tax court," could disqualify a debtor under this prong. Because the bankruptcy court made no such determination before the petition date, we leave that hypothetical question for another day.

[6] The tax code uses the word "plan" in the context of some types of funds and accounts, and "governing instrument" in the context of others. Section 408, which sets out the requirements for IRAs, refers to a "governing instrument." 26 U.S.C. § 408(a).

10

*instrument* that has been determined by the [IRS] to be exempt from taxation under . . . s. 408." Fla. Stat. § 222.21(2)(a)(2) (emphasis added). So the object of the phrase "maintained in accordance with" is "a plan or governing instrument"—not § 408 of the Internal Revenue Code. The Florida exemption thus turns on whether the IRA has been maintained in accordance *with its own governing instrument*, not on whether the IRA has been maintained in compliance with § 408 in the first instance.

This will often be a distinction without a difference where (as we will see is the case here) the IRA owner engages in behavior that turns out to be prohibited by both the governing instrument and the tax code. But it is "the duty of the court to give effect, if possible, to every clause and word of a statute." *In re Failla*, 838 F.3d 1170, 1175 (11th Cir. 2016) (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)). Moreover, the distinction drawn by Florida law can be a meaningful one. We provide a few examples to highlight the practical implications of our statutory reading, as well as to properly direct our own inquiry.

On the one hand, federal laws governing retirement accounts change frequently, meaning that amendments to the tax code may require changes to a retirement plan's terms. The Tax Reform Act of 1986, for example, required employers to remove a formerly "common" type of "benefit formula" from their pension plans by January 1, 1989. *See Scott v. Admin. Comm. of the Allstate Agents Pension Plan*, 113 F.3d 1193, 1195 (11th Cir. 1997). If a pensioner's employer had refused to change its plan and continued to dole out improper benefits, the pensioner would have been a participant in a fund maintained in

11

accordance with its own plan or governing instruments, but *not* maintained in accordance with § 401(a) of the Internal Revenue Code.  The Florida exemption statute would likely allow such a pensioner to shield his retirement fund from creditors, even though the fund was not maintained in compliance with the tax code—at least until it was "subsequently determined" that the governing instrument was not exempt.  Fla. Stat. § 222.21(2)(a)(2).  The Florida exemption thus contains somewhat of a safe harbor, allowing IRAs to maintain creditor-exempt status for a period of time after the law changes.

Conversely, because an IRA's plan or governing instrument may contain requirements that go *beyond* the law, an IRA could be operated in a way that satisfies the tax code, yet violates additional restrictions set out in its own governing instruments.  For example, "IRAs are, as a statutory matter, permitted to hold real property."  *Dabney v. Comm'r*, 107 T.C.M. (CCH) 1535, at \*4 (2014).  But an IRA custodian is not required to offer "the option to invest IRA funds in *any* asset that is not prohibited by statute," and has "the power to prohibit the purchase and holding of real property" through the terms of the governing instrument.  *Id.* (emphasis added).  In other words, IRA governing instruments can impose requirements that go beyond the law—and section 222.21(2)(a)(2) demands compliance with those additional requirements.  Florida law thus would not shield an IRA owner who violated the terms of his governing instrument, even in the absence of a tax code violation.

Our sole task, then, is to determine whether Yerian maintained his IRA in accordance with its own plan or governing instruments.  The parties have identified

12

as the governing instruments of this IRA two contracts between Yerian and IRA Services Trust Company: a Traditional IRA Agreement, and an IRA LLC Agreement.[7]  The Trustee argues that Yerian violated the terms of the latter document, and we agree.  The IRA LLC Agreement was the contract under which IRA Services Trust Company permitted Yerian to make his own IRA investments through an LLC.  The Agreement, which Yerian signed on June 1, 2012, contained the following language:  "I acknowledge that I have not and will not engage in any prohibited transactions within my retirement account or its asset holdings."  The Agreement further stated, in bold:  "A prohibited transaction is a transaction between a plan (the LLC) and a disqualified person that is prohibited by law."  It explained that a prohibited transaction included any "act of a fiduciary by which plan income or assets are used for his or her own interest," and any "transfer of plan income or assets to, or use of them by or for the benefit of, a disqualified person."  A "disqualified person," in turn, explicitly included "the owner" of the IRA as well as the owner's "spouse."

Yerian admits that he engaged in self-dealing transactions "prohibited by law."  Yerian used the condominium in Puerto Rico, an asset of the IRA LLC, for his own benefit.  He and his wife took title to two cars purchased by the IRA LLC, and even drove one of them as a personal vehicle.  It is plain to us that Yerian violated the express terms of the IRA LLC Agreement.  Based on these facts, it is similarly plain that he failed to maintain his IRA in accordance with its governing

---

[7] Because the parties do not dispute that these two documents are the IRA's governing instruments, we do not attempt to define the term "governing instrument" as used in section 222.21(2)(a)(1)–(3).

13

instrument—and as a consequence forfeited his creditor exemption under section 222.21(2)(a)(2).

Yerian tries to avoid the statute's "maintained in accordance with" requirement, but his efforts are in vain. First, Yerian argues that every section 222.21(2)(a)(2) inquiry should turn on whether an IRA has lost its tax-exempt status in an unfavorable final and nonappealable proceeding. He asserts that once "it is established that an account is governed by proper documents, the account is exempt from creditors unless and until the account is determined to have lost its tax-exempt status" in a final proceeding. Not so. Recall that the statute contains three requirements: (1) an initial determination by the IRS that the terms of a plan or governing instrument established a tax-exempt IRA; (2) maintenance of the IRA in accordance with those terms; and (3) no subsequent determination in a final proceeding that the terms did *not* establish a lawful exemption. Fla. Stat. § 222.21(2)(a)(2). An unfavorable final proceeding and an owner's failure to properly maintain his IRA are two *different* ways to forfeit a section 222.21(2)(a)(2) exemption. Yerian's argument fails to give any effect at all to the requirement that an IRA be "maintained in accordance with" its governing documents.

Alternatively, Yerian argues that an IRA satisfies the "maintained in accordance with" prong so long as it continues to exist after being "opened pursuant to an approved plan" or governing instrument. He would thus have us confine our inquiry to the moment he signed the governing instruments and read "*maintained* in accordance with" a proper governing instrument to mean

14

"*established* in accordance with" a proper governing instrument.  But those words of course are not interchangeable.  To "establish" is to "set up (a government, nation, business, etc.); found; institute."  Webster's New World College Dictionary 497 (5th ed. 2014).  To "maintain," by contrast, is to "continue" or "keep in a certain condition."  *Id.* at 880; Black's Law Dictionary 1097 (10th ed. 2014).  So the words in the statute compel us to look beyond the moment of establishment to examine how Yerian operated his IRA over time.  Although Yerian may have set up his IRA properly at the start, his later infractions disqualified him from claiming the exemption.

Finally, as the analysis in this opinion shows, our decision is not guided by the Trustee's argument that it would be "absurd" or "inconsistent with the principles behind the bankruptcy code" for Florida law to have the effect of shielding even some IRAs operated in violation of federal tax law.  This Court applies an "exacting standard for finding absurdity," *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1228 (11th Cir. 2001), lest we impose "the policy predilections of judges" on legitimate legislative choices, *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1188 (11th Cir. 1997).  And in any event, Congress has specifically authorized states to craft their own creditor exemptions—which may be as generous or as austere as the state deems appropriate.  *See* 11 U.S.C. § 522(b); *In re Gamble*, 168 F.3d 442, 444 (11th Cir. 1999).  It is not our role to second-guess the mercy Florida chooses to show its debtors, and we will decline the invitation to do so.  We rest our decision on the plain text of the statute alone.

IV.

15

Yerian failed to maintain his IRA in accordance with its governing instruments, which explicitly prohibited the acts of self-dealing he engaged in with his IRA funds.  As a consequence, he is not entitled to claim a creditor exemption for his IRA under section 222.21(2)(a)(2).  The judgment of the district court is **AFFIRMED**.