[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13143
_____

D.C. Docket No. 8:09-cv-01850-JSM-CPT

KEARNEY CONSTRUCTION COMPANY, LLC,

Plaintiff - Third Party
Defendant – Counter Defendant,

versus

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

Defendant - Third Party
Plaintiff - Counter Claimant - Appellee,

BING CHARLES W. KEARNEY,

Interested party-Defendant-
Third Part Defendant-
Counter Defendant-Appellant,

TONYA NUHFER KEARNEY,
CLAYTON KEARNEY, et al.,

Interested Parties – Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(November 13, 2019)

Before JILL PRYOR, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

This appeal arose out of a complicated set of facts, and is only the most recent of several appeals by one or more of the Appellants.  However, the appellants present for our decision on appeal only two discrete issues,[1] both of which are readily resolved.

We have had the benefit of oral argument, and have carefully reviewed the several opinions of the Magistrate Judge and district court below, as well as the briefs of the parties and relevant parts of the record.  Because we write only for the benefit of the parties, who are already familiar with the facts, we mention only such facts as are necessary to understand our reasoning.[2]  We address the two issues in turn.

A.

---

[1]    Appellant's jurisdictional challenge is rejected as wholly without merit.

[2]    The two most significant rulings below were made by the Magistrate Judge in Docket 711 and Docket 865, both of which were adopted by the district court.  Unless otherwise stated, when we refer to a ruling of the district court, we mean one of those rulings of the Magistrate Judge.

The first issue is presented by Appellant Bing Charles W. Kearney, Jr. (hereinafter referred to as "Bing Kearney").  The issue involves Bing Kearney's IRA Account No. -1122 at US AmeriBank (now known as Valley National Bank), and his pledge of collateral as security for the line of credit he obtained from Moose Investments of Tampa LLC[3] (hereinafter referred to as "Moose Investments") pursuant to his March 1, 2012 Security Agreement with Moose Investments. The issue is purely factual: did that pledge of collateral include his IRA Account No. -1122.[4]   In this summary judgment posture, the issue then is whether Bing Kearney adduced sufficient evidence to create a genuine issue of material fact to support his argument that the collateral pledged did not include his IRA Account No. -1122.

We begin with the plain language of the Security Agreement.  The collateral conveyed as security stated as follows:

> **Grant of Security Interest.**     As security for any and all Indebtedness (as defined below), the Pledgor hereby irrevocably and unconditionally grants a security interest in the collateral described in the following properties[:] all assets and rights of the Pledgor,

---

[3]     Moose Investments was owned by Bing Kearney's son, Clayton.  The opinion of this Court in Appeal No. 17-11368 noted that Bing Kearney exercised considerable control over Moose Investments.

[4]     With one minor exception addressed below, Bing Kearney does not challenge the district court's holding that, if, as a matter of fact, Bing Kearney did pledge the IRA account, the legal consequence was that the IRA account was not exempt under Fla. Stat. §222.21(2)(a). We address the one exception below in footnote 7, concluding that Bing Kearney's argument in that regard is totally without merit.

wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof, all goods (including inventory, equipment and any accessories thereto), instruments (including promissory notes)[,] documents, accounts, chattel paper, deposit accounts, letters of credit, rights, securities and all other investment property, supporting obligation[s], any contract or contract rights or rights to the payment of money, insurance claims, and proceeds, and general intangibles (the "Collateral").

We agree with the district court that the above language constitutes an unambiguous pledge of "all assets and rights of the Pledgor," including his IRA Account No. -1122.  See Magistrate Judge's Report and Recommendation, Docket 865, at 26 ("[T]he language of the Security Agreement is clear, unambiguous, and without exception.").

The only evidence Bing Kearney adduces to support his argument that he did not intend to include his IRA account as part of the collateral is his own affidavit and that of James Reed, the manager of Moose Investments.  Both affidavits asserted that neither Bing Kearney nor Moose Investments intended that the IRA Account No. -1122 would be included as part of the collateral.  However, the district court[5] struck Reed's affidavit as a sham because it was inconsistent with his prior sworn testimony earlier in the same litigation.[6]  Although the district

---

[5]    See Magistrate Judge Report and Recommendation, Docket 865 at 23 n.11 and related text.

[6]    That earlier sworn statement was in support of the effort by Moose Investments to establish that it had a superior lien on the garnished funds (including the IRA account) by virtue of Bing Kearney's Security Agreement and its UCC-1 perfection thereof prior to Travelers' writ of garnishment.  That position of course assumed that Bing Kearney owned the IRA account and

4

court did not actually strike Bing Kearney's similar affidavit, the district court rejected its assertion with respect to the intent of the parties because the affidavit was self-serving, conclusory, and contradicted by other evidence in the record. See Magistrate Judge Report and Recommendation, Docket 865 at 24-25. The district court noted that Bing Kearney's affidavit was inconsistent with the earlier affidavit of Reed, discussed above, and also inconsistent with Bing Kearney's own earlier court filings in support of Moose Investments' claim to a superior lien to the garnished funds. Id. at 26.

In light of the unambiguous language of the Security Agreement, and the circumstances described above, we agree with the district court that "no genuine issue of material fact exists as to whether the 'IRA' funds currently found in Account -1122 were encompassed and pledged by virtue of Mr. [Bing] Kearney's Security Agreement with Moose [Investments]." Id. at 29.

Bing Kearney also argues[7] on appeal that there was no pledge of the IRA account because it was not delivered to Moose Investments, which never possessed

---

granted a security interest in it.

[7]    The one non-factual argument, see footnote 4, Bing Kearney makes with respect to this IRA issue is as follows. He argues that, even if we hold that the IRA account was pledged, he nevertheless is protected by Fla. Stat. §§222.21(2)(a)1 and 2 because it has never been determined that his IRA does not qualify as exempt from taxation. In other words, Bing Kearney argues that the "unless" clauses of §§222.21(2)(a)1 and 2 save his exemption. Sections 222.21(2)(a)1 and 2 provide that when an IRA plan has been preapproved or determined to be exempt by the Internal Revenue Service, then, if the plan is maintained in accordance with its governing instrument, it is exempt from creditors' claims, unless the plan has subsequently been

5

or controlled the account. Thus, he argues that the security interest was not perfected. However, the crucial issue is whether the IRA account was used as security for a loan, not whether the security interest was perfected. It is well established that an unperfected security interest is nevertheless enforceable as between the parties. See Fla. Stat. § 679.2031(2).

For the foregoing reasons, we conclude that the district court properly held that Bing Kearney's IRA Account No. -1122 was in fact pledged as security for his loan, and therefore was not exempt under § 222.21.[8] We turn now to the only other issue presented to us on appeal.

## B.

The second issue in this appeal is presented to us by the Interested Parties. The Interested Parties argue on appeal that the six joint accounts at

---

determined not to be exempt from taxation. We readily reject this argument as wholly without merit. Section 222.21(2)(a)1 applies only if the Internal Revenue Service has "pre-approved" an IRA as exempt from taxation, and there is no evidence of any such "pre-approval" of Bing Kearney's IRA. Similarly, §222.21(2)(a)2 applies only if the Internal Revenue Service has "determined" that an IRA is exempt from taxation, and there is no evidence of any such "determination" with respect to Bing Kearney's IRA. See In re Yerian, 927 F.3d 1223, 1229 (11th Cir. 2019). The burden of proving such "pre-approval" or "determination" was on Bing Kearney. See Kane v. Stewart Tilghman Fox & Bianchi, P.A., 197 So.3d 137, 141 (Fla. 4th DCA 2016) ("[T]he party seeking an exemption from garnishment has the burden of proving entitlement to the exemption.").

[8]    Bing Kearney's other arguments with respect to his IRA account are rejected without need for further discussion.

USAmeriBank—Accounts Nos. -0056, -3695, -0129, -0302, -0020, and -7939—are subject to garnishment as property of Bing Kearney only to the extent of Bing's actual ownership of the several joint accounts, and that Florida law provides a presumption, in the absence of evidence to the contrary, that the ownership of a joint account is pro rata in proportion to the number of names on the joint account. We conclude that this "proportionate share" argument has not been preserved for appeal by the Interested Parties. They did not make this argument in their motion to dissolve the writ of garnishment or in their motion for summary judgment. Rather, they argued to the magistrate judge that Bing Kearney owned no part at all of the joint accounts, but rather that he was a mere "convenient signor" of the several joint accounts.[9] After the Magistrate Judge rejected those arguments, Magistrate Judge R&R, Doc. 711, the Interested Parties again failed to make the "proportionate share" argument in their objections to the Magistrate Judge's Report and Recommendation. The Interested Parties made their "proportionate share" argument for the first time in their Motions for Release of Funds, Docket

---

[9]    The Interested Parties also argued that Travelers' judgment lien and writ of garnishment on all of the garnished funds was an inferior lien, inferior to a superior lien held by Moose Investments pursuant to its UCC-1 and security interest as granted by Bing Kearney. They also argued that Travelers' judgment lien and writ of garnishment was an inferior lien, inferior to a superior lien held by FTBB as assignee of the judgment obtained against Bing Kearney by Regions Bank and its previously served garnishment lien on all of the garnished funds. Of course, both such arguments necessarily assume that Bing Kearney owned the entirety of all of the garnished funds, an argument inconsistent with the Interested Parties' belated "proportionate share" argument.

7

852-55, which were filed only after the district court adopted the Magistrate Judge's R&R.  In other words, the Interested Parties raised their "proportionate share" argument for the first time after the district court had finally rejected their arguments to date.  The district court denied the Interested Parties' belated "proportionate share" argument without discussion.  The Interested Parties repeat their "proportionate share" argument on appeal as their only challenge to the judgment of the district court.

We conclude that the Interested Parties have not preserved for appeal their belated "proportionate share" argument because they did not raise this argument in accordance with Florida garnishment procedures.  Fla. Stat. § 77.07(2) requires any party with an interest in a garnished property to make its specific objections to the writ of garnishment known within 20 days of the writ's execution through a motion to dissolve the writ.  The motion must state which allegations in the plaintiff's motion for a writ of garnishment are untrue.  "On such motion this issue shall be tried, and if the allegation in plaintiff's motion which is denied is not proved to be true, the garnishment shall be dissolved."  Id. (emphasis added).  Thus, the statute provides that the issues considered in the trial shall be those raised in the motion to dissolve.[10]  If a party fails to raise an issue in its motion to dissolve, it loses the

---

[10]    Florida law requires that garnishment procedures are strictly construed.  See Zivitz v. Zivitz, 16 So.3d 841, 847 (Fla. 2d DCA 2009) (Florida garnishment procedures require "strict adherence to the provisions of the statute"); Akerman Senterfitt & Eidson, P.A. v. Value

8

opportunity to try that issue.  The issues raised in the motion to dissolve define the scope of both pre-trial discovery and the issues litigated before the factfinder.  In essence, the garnishment persists unless the challenges to its factual underpinnings that are specified in the motion to dissolve have merit.

Here, the Interested Parties did not raise the argument they now present on appeal—that Florida law presumes that parties to a joint account each own a pro rata share of the account, in the absence of evidence to the contrary—until after they filed their motions to dissolve under Fla. Stat. § 77.07(2).  Travelers sought discovery on, and actually litigated, the issue that the Interested Parties initially raised in their motions—whether Bing Kearney had any interest at all in the garnished accounts.  Under Florida's garnishment procedures, nothing more was, or should have been, required of them.[11]

## C.

For the foregoing reasons,[12] the judgment of the district court is

---

Seafood, Inc., 121 So.3d 83, 86 (Fla. 3d DCA 2013) ("It is fundamental that garnishment statutes must be strictly construed.").

[11]    Although we need not, and do not, address the merits of the Interested Parties' belated "proportionate share" argument, we note that there is considerable evidence in the record that Bing Kearney owned or controlled at least the major portion of the amounts at issue.  See Magistrate Judge's Report and Recommendation, Docket 711, at 24-29 (describing evidence to that effect, including earlier testimony of Bing Kearney and others, as well as other evidence of his control).

[12]    Other arguments of Bing Kearney or the Interested Parties are rejected without need for further discussion.

9

AFFIRMED.